**The People of the State of Illinois ex rel. William F. Stine, Appellee, v. City of Chicago et al., Appellants.**

### Gen. No. 26,527.

1. MUNICIPAL CORPORATIONS—*resignation of policeman and conviction of felony as affecting right to pension.* Section 6 of the Act establishing the police pension fund (Cahill's Ill. St. ch. 24, ¶ 834) does not apply to a policeman who had resigned and who, at the time of his conviction for a felony, had not yet received any benefit under the act because he had not reached the age of 50 years.

2. PARDON AND PAROLE—*effect as restoring right to pension.* A certificate executed by the Governor of the State restoring one who had been convicted of a felony to his rights of citizenship under the provisions of section 49, ch. 108, Rev. St. (Cahill's Ill. St. ch. 108, ¶ 65) is to all intents and purposes a pardon and restores the recipient to all of his civil rights, including the right to a pension from the police pension fund.

Appeal from the Superior Court of Cook county; the Hon. JOHN J. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Affirmed. Opinion filed October 4, 1921. Rehearing denied October 17, 1921.

SAMUEL A. ETTELSON, for appellants; JAMES W. BREEN, of counsel.

A. D. GASH, for appellee.

MR. JUSTICE MORRILL delivered the opinion of the court.

This is an appeal from a judgment of the superior court of Cook county awarding a writ of mandamus and directing the respondents to pay to petitioner a pension as provided by the act establishing a police pension fund in the City of Chicago. The petition alleges that the petitioner was appointed a police patrolman in said city on April 1, 1891, and performed his duties as such until April 14, 1911, when he retired from the police force; that on September 1, 1911, he presented his application for a pension, which was denied because at that time petitioner had not reached the age of 50 years; that on February 7, 1914, petitioner reached the age of 50 years and on February 11, 1914, he renewed his application for a pension, but that the respondents denied said application on July 16, 1914; that petitioner has never received any benefits from the police pension fund of the city and has made a demand on respondents for a pension equal to half of the salary appropriated from time to time for patrolmen, and prays that he be granted a pension from July 1, 1914, to date. The petition also sets forth the various appropriations made by the City Council for payment of the salaries of patrolmen from January 1, 1914 to January 1, 1919, and prays that a writ of mandamus may issue directed to the respondents commanding them to pay him back pension from July 1, 1914, to December 31, 1919, and a sum equal to half of the sum appropriated to the office of police patrolman of the City of Chicago in the future and for general relief.

The answer admits the filing of the original application for a pension and the renewal thereof in February, 1914, and alleges that the application of Febru-

ary, 1914, was denied for the reason that on June 25, 1914, the petitioner was found guilty by the criminal court of Cook county on a charge of conspiracy and sentenced to the penitentiary, and further alleges that under the terms and provisions of the Police Pension Fund Act when any person who has received any benefits from the fund is convicted of a felony it becomes the duty of the trustees of said fund to immediately terminate any pension granted such person, and prohibits such person from receiving any further pension, allowance or benefit of any kind. The answer denies that the petitioner is entitled to receive a pension and alleges that when his application came before the respondents, the petitioner was then under conviction and had been sentenced to the penitentiary for a felony.

The case was heard before the court without a jury and resulted in a judgment entered on July 7, 1920, ordering that a writ of mandamus issue against the respondents directing them to pay to the petitioner $3,975 back pension due from July 1, 1914, to June 30, 1920, and $55 per month in the future. The appeal seeks a reversal of this judgment.

The evidence in the case was wholly documentary and shows a certificate of the governor setting forth the proceedings at a meeting of the Division of Pardons and Paroles of the Board of Public Welfare, and its order of November 18, 1919, which recites the conviction of the petitioner on October 17, 1914, for the crime of conspiracy, his commitment to the penitentiary on April 23, 1917, and his parole on April 22, 1919. The order further recites that the petitioner has faithfully served the minimum term of his parole and the opinion of the Division that he can safely be trusted to be at liberty and that his final release will not be incompatible with the welfare of society and that he be and is hereby finally discharged for and on account of his conviction of said offense, to which is

attached the certificate of approval of the proceedings by the governor of the state and the commutation of the sentence. The evidence also shows a certificate executed by the Governor of the State on May 17, 1920, pursuant to law whereby the said William F. Stine was restored to all his rights of citizenship which may have been forfeited by his conviction for the crime of conspiracy as aforesaid. This certificate was executed pursuant to section 5 of an Act of the General Assembly entitled, ''An act to allow convicts in the penitentiary a credit in diminution of their sentence and of their being restored to citizenship under certain conditions, approved March 19, 1872.'' Section 49, ch. 108, Rev. St. (Cahill's Ill. St. ch. 108, ¶ 65.)

It is contended by the appellants that the granting of a pension to the petitioner will be in violation of the following provisions of section 6 of the Act (Cahill's Ill. St. ch. 24, ¶ 834) establishing the police pension fund:

''Whenever any person who shall have received any benefit under this act shall be convicted of a felony, or shall become an habitual drunkard, or a non-resident of the United States, or whenever any policeman shall fail to submit himself for examination as to fitness for duty as provided for in section 4 hereof, or shall disobey the requirements of said board in respect to said examination, then said board shall order that such pension allowance as may have been granted to such policeman shall cease and determine, and such policeman shall receive no further pension, allowance or benefit under this act.''

The language of the above-quoted statute indicates that it is applicable to any policeman ''who shall have received any benefit under this act,'' and does not apply to the case of the petitioner, who has never received any such benefit.

It is also contended by the appellee that the action taken by the Governor with reference to the petitioner in accordance with the parole law of the State was not

a pardon but only a commutation of the sentence modifying and cutting down the same. It therefore appears that the only question involved in the case is whether or not the petitioner has been in effect pardoned and restored to all of his rights of citizenship. In discussing this question it was held by the Supreme Court of the United States that: "A pardon is an act of grace by which an offender is released from the consequences of his offense, so far as such release is practicable and within control of the pardoning power, or of officers under its direction. It releases the offender from all disabilities imposed by the offense and restores to him all his civil rights. In contemplation of law, it so far blots out the offense *that afterwards it cannot be imputed to him to prevent the assertion of his legal rights*. It gives to him a new credit and capacity, and rehabilitates him to that extent in his former position." *Knote v. United States*, 95 U. S. 149. This definition of a pardon and statement of its effect upon the rights and conditions of its recipient has been the subject of frequent consideration by courts and is abundantly sustained by the authorities.

We are of the opinion that the certificates issued by the Governor of the State in conformity with the statutes above mentioned were to all intents and purposes a full pardon of the petitioner, securing to the petitioner all the benefits of a pardon, and seem "to be entitled to any liberality of construction that may not contravene any well-settled adjudication." *Jones v. Harris*, 32 S. C. (1 Strobhart) 160. Their effect was to restore him to all of his civil rights, including the right to a pension under the act in relation thereto.

The judgment of the superior court is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.