UNITED STATES of America,
Plaintiff,

v.

Terry Oliver WALKER, Defendant.

Crim. No. S–Cr–72–21.

United States District Court,
S. D. Illinois, S. D.

Jan. 10, 1973.

Donald Mackay, U. S. Atty., S. D. Ill., Springfield, Ill., for United States, the plaintiff.

Edward J. Cunningham, Springfield, Ill., for defendant Walker.

## OPINION OF THE COURT

POOS, District Judge.

This cause comes before the Court on the Motion of the Defendant, Terry Oliver Walker, to Dismiss the Indictment. The indictment charged that on or about September 7, 1971 the Defendant, being a convicted felon, knowingly received in commerce and affecting commerce, a firearm in violation of Title 18, App., U.S.C., Section 1202(a)(1).

Section 1202(a)(1) states in pertinent part:

"Any person who has been convicted by a court of the United States or of a State or any political subdivision thereof, of a felony and who receives, possesses, or transports in commerce or affecting commerce, after the date

of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

The following facts have been stipulated by the parties:

(1) That the Defendant is a convicted felon;

(2) That the firearm in question was shipped from Firearms Import and Export Corporation in Miami, Florida, on November 1, 1970, to Lawson Arms in Godfrey, Illinois;

(3) That on March 30, 1971, Lawson Arms of Godfrey Illinois, sold the firearm in question to Traders Pawn Shop of Alton, Illinois;

(4) That on April 3, 1971, Traders Pawn Shop in Alton sold the firearm in question to Charles Dublo of Bethalto, Illinois;

(5) That Charles Dublo discovered the firearm missing sometime in July 1971, but did not report this fact to the police;

(6) That the Defendant, on September 7, 1971, was found with the firearm in question.

Prior to the Supreme Court decision in United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), the Government did not allege in the indictment, nor was an attempt made to show that the firearms involved had been received, possessed, or transported in commerce or affecting commerce. The Court in Bass, however, held that the Government must show the requisite nexus with interstate commerce with respect to receipt, possession and transportation of the firearm. Thus, the issue to be determined herein is whether or not the facts established the requisite nexus with interstate commerce with respect to the receipt of the firearm by the Defendant.

The Defendant alleges that the facts do not show that the firearm in question was received in commerce or affected commerce. Defendant contends that the receipt of the firearm is too far removed in time from the original movement of the firearm in commerce.

The Government's position, on the other hand, is that once proof is established that the firearm in question was, at some time, shipped in interstate commerce, there is a sufficient showing that the receipt or possession of the firearm by a convicted felon affects commerce within the meaning of the statute.

The Government argues that it was the intent of Congress, in enacting Section 1202(a) to wrap the firearm in the protective veil of interstate commerce once it is shipped in commerce. Such intent, the Government argues, is stated in Section 1201 of Title 18, App. U.S.C., which provides in pertinent part as follows: "The Congress hereby finds and declares that the receipt, possession, or transportation of a firearm by felons . . . constitutes (1) a burden on commerce or threat affecting the free flow of commerce . . .; (4) a threat to the continued and effective operation of the Government of the United States and of the Government of each State guaranteed by Article IV of the Constitution." The Government also quotes Senator Long as further evidence of this congressional intent as follows:

"You cannot do business in an area, and you certainly cannot do as much of it and do it well as you would like, if, in order to do business, you have to go through a street where there are burglars, murderers, and arsonists armed to the teeth against innocent citizens. So the threat certainly affects the free flow of commerce." 114 Congressional Record 13869.

This is indeed an eloquent argument by the Government and an excellent statement by Senator Long, nonetheless it evades the particular issue involved in this case. The Supreme Court in Bass quoted Senator Long, but also pointed out the ambiguity in his statement. The Court stated:

"Such evils, we note, would be most thoroughly mitigated by forbidding every possession of any firearm by

specified classes of especially risky people, regardless of whether the gun was possessed, received, or transported 'in commerce or affecting commerce.' In addition specific remarks of the Senator can be read to state that the amendment reaches the mere possession of guns without any showing of an interstate commerce nexus. But Senator Long never specifically says that no connection with commerce need be shown in the individual case. And nothing in his statements explains why, if an interstate commerce nexus is irrelevant in individual cases, the phrase 'in commerce or affecting commerce' is in the statute at all. But even if Senator Long's remarks were crystal clear to us, they were apparently not crystal clear to his Congressional colleagues. Meager as the discussion of Title VII was, one of the few Congressmen who discussed the amendment summarized Title VII as 'mak[ing] it a Federal crime to take, possess, or receive a firearm across State lines . . .' 114 Cong.Rec. 16298 (statement of Representative Pollock)."

■ The Court's reasoning adequately reveals the ambiguity in the statute as to whether or not "commerce or affecting commerce" must be alleged and proved by the Government. The Court has laid that ambiguity to rest in the Bass decision in holding that a requisite nexus with interstate commerce must be shown by the Government. The question here is what is that requisite nexus?

As to the Government's contention that the findings of Section 1201 should control the interpretation of Section 1202(a), the Court in Bass indicates otherwise. The Court stated in footnote 14:

"For the same, and additional, reasons, § 1201, which contains the congressional 'findings' applicable to § 1202(a) is not decisive support for the Government . . . But these findings of 'burdens' and 'threats' simply state Congress' view of the constitu-

tional basis for its power to act; the findings do not tell us how much of Congress' perceived power was in fact invoked."

To determine exactly what quantum of proof is sufficient to make a showing that certain prescribed conduct affects commerce, the Government cites United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941); Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), and Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). Without going into a lengthy discussion of these cases, the Court finds that these cases do not pertain to the issue before this Court.

The Darby case dealt with the production of goods for interstate commerce which clearly had an effect on commerce between the states. Also the Department of Labor had established guidelines for determining when an industry is in commerce.

The Perez case concerned loan sharking activities, and the Court carefully analyzed the basis of the statute in upholding its constitutionality. The Court found that certain reports had been submitted and relied upon by Congress, and that these reports revealed that loan sharking was a part of organized crime and transcended state boundaries.

Similarly, in the Atlanta case, the Court ruled that a motel which primarily dealt with transients, many of whom would be from out of state, was in commerce and thus could not discriminate.

In the instant case, however, there is no showing of any behavior or conduct by the Defendant which affects commerce as in the Atlanta case. There is no showing of a manufacturer of goods for interstate commerce as in the Darby case, and there is no connection with organized crime in the activities of this Defendant as in the Perez case.

■ The statute on its face demonstrates the frailty of the Government's argument that once a firearm has moved through interstate commerce, it is forev-

er labeled "interstate." Section 1202(a) simply stated provides in pertinent part as follows:

"Any person who has been convicted . . . of a felony . . . and who receives, possesses, or transports in commerce or affecting commerce . . ."

The statute specifies "any person who receives, possesses, or transports in commerce or affecting commerce." The emphasis of the Government is that it is the firearm that meets the requirement of interstate commerce. This is clearly contrary to the language of the statute which requires action on the part of the person affecting commerce and committing the crime. There is no showing by the Government that this Defendant received the firearm in interstate commerce except for the fact that this firearm was shipped from Miami, Florida on November 1, 1970. Two additional intrastate transfers of this firearm occurred before the Defendant was apprehended with the firearm. A duration of eleven months separated the first and only movement of this firearm in interstate commerce from the time the Defendant was apprehended.

Since the firearm had been out of interstate commerce for approximately eleven months, it would strain the fabric of law beyond reason to say that the receipt of this firearm affected interstate commerce.

■ There has been no showing by the Government that this firearm affects interstate commerce. This leaves the Court with no other alternative but to presume that since the Defendant is a felon and since he was apprehended with the firearm, interstate commerce was affected. This reasoning reverts back to the position of the Government in Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); i.e., that possession of a firearm is presumptive evidence that such firearm was shipped or transported or received in interstate commerce. This type of reasoning was condemned in Tot. The Court held that

there was no rational connection between the facts proved and the ultimate fact presumed. Likewise, this Court is unable to reasonably and logically adhere to such a presumption.

Accordingly, this Court finds that the Defendant did not receive this firearm in interstate commerce, nor did the Defendant receive the firearm in any manner which could have affected interstate commerce.

Inasmuch as the Government has failed to show the requisite nexus with interstate commerce by this Defendant, the indictment must be dismissed.

It is so ordered.