**UNITED STATES of America,**
**Plaintiff-Appellant,**
v.
**Terry Oliver WALKER, Defendant-**
**Appellee.**
No. 73–1246.

United States Court of Appeals,
Seventh Circuit.
Argued Sept. 27, 1973.
Decided Nov. 28, 1973.
Certiorari Denied March 18, 1974.
See 94 S.Ct. 1574.

**1354**

David J. Muchow, Atty., U. S. Dept. of Justice, Washington, D. C., Donald B. Mackay, U. S. Atty., Springfield, Ill., for plaintiff-appellant.

Edward J. Cunningham, Springfield, Ill., for defendant-appellee.

Before STEVENS and SPRECHER, Circuit Judges, and CAMPBELL,* Senior District Judge.

STEVENS, Circuit Judge.

The district court dismissed an indictment charging that defendant, a convicted felon, had received a firearm "in commerce and affecting commerce," in violation of 18 U.S.C. App. § 1202(a).[1] 352 F.Supp. 113. The government's appeal raises two questions: (1) whether, since the dismissal was based on facts not set forth in the indictment, the order is appealable; and (2) whether, since defendant's possession of the firearm was unrelated to its earlier interstate shipment, the indictment charged an offense.

The indictment is drafted in the language of the statute.[2] After discovery indicated that the firearm had only crossed a state line on one occasion several months before it came into his possession, defendant moved to dismiss the indictment. In response to that motion, the government stipulated to the following facts:

On March 1, 1970, the gun was shipped from Miami, Florida, to a retailer in Alton, Illinois. Six months later the retailer sold it to a pawnbroker, who resold it to a third party. After that party discovered that the gun was missing, it was found in defendant's possession. There is no suggestion that defendant had any connection with the interstate shipment or with either of the subsequent sales. Thus, the government has stipulated that its evidence will simply establish (a) that defendant is a convicted felon, and (b) that he possessed a firearm which had previously moved in interstate commerce.

The district court considered these facts in the light of the Supreme Court's opinion in United States v. Bass, 404 U. S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488. The district judge noted that the Court had rejected the government's original interpretation of the statute, namely, that no nexus between a receipt or possession and interstate commerce need be shown; the district judge then concluded that since this defendant's possession was neither in commerce, nor had any effect on commerce, the nexus required by the *Bass* rationale was not present. He rejected the government's argument that the case was controlled by dicta in the *Bass* opinion,[3] relying instead on the

* Senior Judge William J. Campbell of the United States District Court for the Northern District of Illinois, sitting by designation.

1. That section was enacted as a part of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 197, 236. It provides in pertinent part:
   "Any person who—
   "(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses, or transports in commerce or affecting commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

2. The indictment charged:
   "That on or about the 7th day of September, 1971, at the City of Cottage Hills, Southern District of Illinois,

TERRY OLIVER WALKER

having been convicted on the 19th day of November, 1970, by the Circuit Court, Third Judicial Circuit of Illinois, Madison County, Illinois, of burglary, a felony, knowingly received, in commerce and affecting commerce, a firearm, that is, a Titan, .25 caliber semi-automatic pistol, Serial Number B89543; in violation of Title 18, Section 1202(a)(1), United States Code Appendix."

3. At page 3 of its opposition to the motion to dismiss the indictment, the government quoted the following portion of the *Bass* opinion:
   "Having concluded that the commerce requirement is § 1202(a) must be read as part of the 'possesses' and 'receives' offenses, we add a final word about the nexus with interstate commerce which must be shown in individual cases. The Government can obviously meet its burden in a variety of ways. We note only some of

thrust of the Court's reasoning which requires an unambiguous expression of congressional intent before state criminal jurisdiction may be duplicated by federal regulation under the commerce clause.

We first consider the jurisdictional issue and then the *Bass* opinion.

I.

The government invokes our jurisdiction under the Criminal Appeals Act, 18 U.S.C. § 3731, as amended effective January 2, 1971. 84 Stat. 1880, 1890.[4] That amendment cured the statutory objection to our jurisdiction that we reviewed *en banc* in *Ponto*,[5] *Grochowski*[6] and *Gustavson*.[7] However, that amendment could not overcome the alternative ground for decision in those cases, namely, that dismissals predicated on facts not set forth in the indictment were actually acquittals from which appeal was foreclosed by the double jeopardy clause of the Constitution. See United States v. McCreery, 473 F.2d 1381 (7th Cir. 1973).

The *Ponto* "acquittal" rationale is inapplicable here. In each of the cases in which that rationale was applied, the alleged offense was a refusal to submit to induction into the Armed Forces in violation of 50 U.S.C. App. § 462. Under that statutory scheme, judicial review of the classification process is normally unavailable until the registrant is required to defend a criminal charge.[8] In such cases, determination of guilt or innocence typically turns on an analysis of the defendant's Selective Service file. *Ponto* holds that the judge's ruling on the merits of the defense which is most typically asserted at trial is, in effect, an acquittal whether the ruling is made after or before the jury is impaneled.

The rulings in *Ponto*, *Grochowski*, *Gustavson* and *McCreery* did not involve the sufficiency of the government's charge. As those opinions respectively stressed, each of the dismissals sustained the merits of an affirmative defense.[9] In the case before us,

these. For example, a person 'possesses . . . in commerce or affecting commerce' if at the time of the offense the gun was moving interstate or on an interstate facility, or if the possession affects commerce. Significantly broader in reach, however, is the offense of 'receiv[ing] . . . in commerce or affecting commerce,' for we conclude that the Government meets its burden here if it demonstrates that the firearm received has previously traveled in interstate commerce." 404 U.S. at 350, 92 S.Ct. at 524.

4. That paragraph now provides:
"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."

5. United States v. Ponto, 454 F.2d 657 (1971).

6. United States v. Grochowski, 454 F.2d 657 (1971).

7. United States v. Gustavson, 454 F.2d 677 (1971).

8. This point was emphasized in the *Ponto* majority's analysis of the constitutional issue:
"An objection to the local board's classification of a registrant can be raised as a defense to a prosecution under 50 U.S.C. App. § 462. The Selective Service Act, 50 U.S.C. App. § 460(b)(3), provides that all questions relating to judicial review of the classification and processing by a board be reviewed in this manner. The motion in the instant case presented questions concerning Ponto's classification, which are raised only by defense. The decision to dismiss by the district judge was based on questions presented by this defense. As such, it was a ruling on the merits of the defense.
"The panel in *Ponto* decided that the order was in the nature of an acquittal, *i. e.*, a ruling on the merits by which the defendant was discharged from prosecution. See Pratt v. United States, 70 App.D.C. 7, 102 F.2d 275, 279 (1939). Upon reconsideration, we conclude that the ruling below was, in fact, an acquittal, and for this reason, appeal by the government is prohibited by the double jeopardy clause of the Fifth Amendment." 454 F.2d at 663.

9. In *Ponto*, defendant's motion "to dismiss the indictment or for a directed judgment of

however, the government's stipulation is a particularization of the general allegation in the indictment. By revealing the facts it is prepared to prove, the government has, in effect, narrowed the charge in the indictment. The question decided by the district court was whether the indictment, as so limited, describes a violation of § 1202(a). It is clear that a dismissal based on a determination of the sufficiency of the charge, as limited by this type of stipulation, is subject to appellate review. See United States v. Fruehauf, 365 U.S. 146, 157–158, 81 S. Ct. 547, 5 L.Ed.2d 476.

We therefore hold that the rationale of *Ponto* does not defeat our jurisdiction.

## II.

It is fair to state the issue on the merits as whether the Supreme Court's dicta describing the reach of the receipt offense in § 1202(a) really means what it appears to say. Four other circuits have recognized that the language of the *Bass* opinion is directly applicable to facts comparable to those before us.[10] The problem which the district court's decision identifies, however, is whether the apparent meaning of that language is consistent with the reasoning which led the Court to reject the government's original construction of the statute.

The government had construed the statute as broadly covering every possession or receipt of a firearm by a convicted felon. That construction had been accepted by five circuits, but, in *Bass*, the Second was persuaded to construe the statute more narrowly to avoid the constitutional issue that would otherwise exist.[11] In this case the district court felt that a comparable constitutional problem is presented by the application of the statute to these facts. For it is conceded that defendant's possession was not in commerce and did not affect commerce. There would appear to be no greater constitutional support for the application of the statute to cases like this than for applying it to every possession of a firearm by a convicted felon.[12]

It is quite clear, however, that the *Bass* decision does not evidence any doubt by the Supreme Court with respect to the power of Congress to prohibit all such possessions. Its opinion makes no reference to the constitutional question which troubled the Second

---

acquittal," see 454 F.2d 647, 649 (panel opinion), was construed by this court as presenting "questions concerning Ponto's classification, *which are raised only by defense.*" 454 F.2d at 663 (emphasis added). Accordingly, the *Ponto* majority concluded that, "the ruling below was, in fact, an acquittal. . . ." *Ibid.* See also 454 F.2d at 665 and 678 and 473 F.2d 1381.

10. United States v. Giannoni, 472 F.2d 136 (9th Cir. 1973), cert. denied 411 U.S. 935, 93 S.Ct. 1911, 36 L.Ed.2d 396; United States v. Brown, 472 F.2d 1181 (6th Cir. 1973); United States v. Mancino, 474 F.2d 1240 (8th Cir. 1973); United States v. Mullins, 476 F.2d 664 (4th Cir. 1973).

11. After noting that the government's construction made the statutory reference to interstate commerce "either totally illogical or mere surplusage," Judge Hays stated:
    "It is considerably more probable that the commerce language was inserted to avoid questions of the scope of Congressional power and to mirror the approach to federal criminal jurisdiction reflected in many other federal statutes." 434 F.2d 1296, 1298.
    \* \* \* \* \*
    "There is serious doubt in the present case whether the statute, if given the interpretation for which the government contends, could withstand constitutional scrutiny." *Id.* at 1299.

12. Indeed, there may be less:
    "If the premise of these rulings is, as at least the lower court firearm decisions imply, that generally crimes which harm business injure interstate commerce, a direct federal prohibition of all such offenses would be at least as easy to justify as a prohibition against possession of firearms by convicted felons. *For obviously to stamp out all such crimes would better protect interstate commerce than merely to prevent some of them, those committed by ex-felons with guns.*" R. Stern, The Commerce Clause Revisited—The Federalization of Interstate Crime, 15 Ariz.L.Rev. 271, 283 (1973) (emphasis added).

Circuit.[13] Moreover, as the Court's decision in Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686, demonstrates, the constitutional support for the statute is provided by the congressional evaluation of the category of transactions of which this is a part,[14] rather than a judicial evaluation of the significance of the particular transaction before it.[15] The district court's concern with the constitutionality of the statute as applied here was misplaced.

The Supreme Court's rejection of the argument that there need be no nexus whatever between interstate commerce and a felon's possession or receipt of a firearm did, however, rest on guides to construction of federal criminal statutes which also support defendant here. As in Rewis v. United States, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493, the Court resolved the ambiguity in a federal criminal statute in favor of lenity and of avoiding a significant change in the Federal-State balance not clearly required by the statement of Congress' purpose.[16] The Court's broad description of the receipt offense would also seem to offend those important policies. Nevertheless, the entire opinion demonstrates that Mr. Justice Marshall's choice of language was deliberate and precise.

In *Bass*, the government had argued that § 1202, enacted as a part of Title VII, and §§ 922(g) and (h), enacted as a part of Title IV of the same statute, would be substantially redundant if an interstate commerce nexus were required for both sections. Although the Court did not accept this argument, it did adopt a construction which minimized the extent of the redundancy. It held that "Title VII complements Title IV by punishing a broader class of behavior" 404 U.S. at 342, 92 S.Ct. at 520. Unlike Title IV, Title VII is not limited to the sending or receiving of firearms "as part of an interstate transaction." *Id.* at 343, 92 S.Ct. at 520.

Similarly, the Court expressly stated that the receipt offense is "significantly broader in reach" than the possession offense. *Id.* at 350, 92 S.Ct. 515. Apparently possession is not proscribed unless the gun is "moving interstate or on an interstate facility, or if the possession affects commerce."• *Id.* at 350, 92 S.Ct. at 524. The differentiation between possession and receipt plainly indicates that no direct connection with commerce is required for the latter offense. Thus, as in other criminal statutes cited by the Court, a federal jurisdictional fact, which may well be extra-

---

13. A perceptive commentator has noted the significant omission of any reference to constitutional doubt in the Supreme Court's affirmance of the Second Circuit:

"In December 1971, the Supreme Court affirmed the Second Circuit's decision in *Bass*. Significantly, however, Mr. Justice Marshall noted at the beginning of his opinion that the Court did so 'for substantially different reasons' which made it unnecessary to reach the constitutional question. Since the Supreme Court made most of the same points as the Second Circuit with respect to the language of the statute, its structure and its legislative history, it is obvious that what the Court was *not* accepting from the Second Circuit was the suggestion of substantial constitutional doubt upon which that court also relied." Stern, *supra*, 15 Ariz.L.Rev. at 282.

14. Section 1201 contains a congressional finding and declaration that the receipt, possession, or transportation of firearms by felons constitutes a burden on commerce or threat affecting the free flow of commerce, a threat to the safety of the President, to the exercise of free speech, and to the effective operation of government. See 82 Stat. 236.

15. See Stern, *supra*, 15 Ariz.L.Rev. at 278–280, 283.

16. We have also required that a federal prosecution of an offense historically a matter of State concern be expressly authorized by Congress. United States v. Altobella, 442 F.2d 310, 315–316 (7th Cir. 1971).

neous to the basic policy of the statute, is an essential element of the offense.[17]

■ Finally, the Court expressly noted that the considerations of federalism and lenity did not require it to adopt the narrowest possible reading of the statute, since its broad reading appropriately reflected the basic legislative purpose of restricting firearm-related activity of convicted felons. *Id.* at 351, 92 S.Ct. 515. Thus, even if the broad reach of the receipt offense proscribed by § 1202 is arguably almost as extensive as if the government had prevailed in *Bass*, the Court's reading does require proof of a jurisdictional fact relevant "to federal criminal jurisdiction alone." *Id.* at 351, 92 S.Ct. 515. Since that fact is alleged in this indictment, even as limited by the government's stipulation, the dismissal was improper.

Reversed and remanded.

WILLIAM J. CAMPBELL, Senior District Judge (concurring).

· I reluctantly concur in reversing the dismissal of this indictment, and do so only because I consider United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L. Ed.2d 488 (1971) as allowing no other result under the facts here presented. In *Bass*, "the Government proceeded on the assumption that § 1202(a)(1) bans all possessions and receipts of firearms by convicted felons, and that no connection with interstate commerce had to be demonstrated in individual cases." 404 U.S. at 338, 92 S.Ct. at 517. Applying principles of statutory construction, the Court held the phrase "in commerce or affecting commerce" related not only to conduct involving *transportation* of firearms, but also to instances in which the defendant is charged with either *receiving* or *possessing* firearms.

Mr. Justice Marshall, speaking for the Court, then continued:

"There is a second principle supporting today's result: unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance. . . . In traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision. . . . In the instant case, the broad construction urged by the Government renders traditionally local criminal conduct a matter of federal enforcement and would also involve a substantial extension of federal police resources. Absent proof of some interstate commerce nexus in each case, § 1202(a) dramatically intrudes upon traditional state criminal jurisdiction. . . . Absent a clearer statement of intention from Congress than is present here, we do not interpret § 1202(a) to reach the 'mere possession' of firearms."

Mr. Justice Brennan's brief concurring opinion indicates that he would have said no more, and had Mr. Justice Marshall done so, I would affirm the district court's dismissal of this indictment. However, the Court's opinion continues with the statement that "we conclude that the Government meets its burden here [*i. e.*, with respect to the offense of "receiving" a firearm] if it demonstrates that the firearm received has previously traveled in interstate commerce.[18]" 404 U.S. at 350, 92 S.Ct. 523. Footnote 18 of the Opinion advises that "this reading preserves a significant difference between the 'receipt' offenses of Title IV and Title VII. See supra at 342–343." At page 343, 92 S.Ct. at page 520 of the Opinion, the Court notes that, unlike § 1202(a), Title IV is "limited to the sending or receiv-

---

17. The Court quoted with approval the Second Circuit's mention of the fact that the reference to interstate commerce in § 1202 mirrored the approach to federal jurisdiction in various other criminal statutes. See 404 U.S. at 341, citing *inter alia* 18 U.S.C. §§ 1951, 1952 and 2421.

ing of firearms as part of an interstate transportation." See also, footnote 10, 404 U.S. at 343, 92 S.Ct. at 520.

This "significant difference" leads to only one conclusion: that if a firearm has *ever* traveled in interstate commerce previous to the time defendant "receives" it, his receipt of that firearm is proscribed by § 1202(a)(1), even if the defendant's receipt of the weapon involved a wholly intrastate transaction.

While this conclusion is dictated by the specific language of the *Bass* decision, I find its implications entirely inconsistent with all that Justice Marshall had to say regarding the need for a "clearer statement of intention from Congress" before the court would construe § 1202(a) as requiring no "interstate commerce nexus in each case", a statutory construction which, in the Court's view, "dramatically intrudes on traditional state jurisdiction." It is difficult to conceive of an instance in which a person charged with possession of a firearm may not also be charged with receiving it. And if all the Government need demonstrate is that the "firearm received has previously traveled in interstate commerce", § 1202(a) effectively proscribes virtually all acts involving possession or receipt of firearms by a person previously convicted of a felony. If the defendant is charged with having received the weapon in any state other than the state wherein it was manufactured, the firearm will necessarily have previously traveled in interstate commerce.

The fortuitous circumstances which would have to exist to render § 1202(a)(1) inapplicable are so unlikely that, in practice, the statute "renders traditionally local criminal conduct a matter of federal enforcement", a change in the "federal-state balance" which Justice Marshall had indicated would not be recognized "absent a clearer statement of intention from Congress".