**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Clifford Ray SUTTON,
Defendant-Appellant.**

**No. 74–2009.**

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1975.

Decided July 24, 1975.

Robert S. Hill, Benton, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., William C. Evers, III, Asst. U. S. Atty., E. St. Louis, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, CUMMINGS and SPRECHER, Circuit Judges.

FAIRCHILD, Chief Judge.

Defendant-appellant Clifford Ray Sutton was charged with two counts of violating §§ 922(a)(6) and 924(a) of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 922(a)(6), 924(a), by knowingly making false and fictitious statements in connection with the acquisition of a firearm, to the effect that he had never been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; and two counts of violating § 1202(a) of Title VII of the Act, 18 U.S.C. App. § 1202(a)(1), by knowingly receiving a firearm in commerce and affecting commerce after conviction of a felony. The jury acquitted Sutton on each of the Title IV counts and convicted him on the remaining Title VII charges. Sutton appeals.

I.

The relevant facts are not in dispute. It was stipulated at trial that Sutton had been convicted of the crime of aggravated battery in an Illinois court on July 31, 1963, and that this offense was punishable under applicable state law by a term of imprisonment exceeding one year. On February 23, 1966, Sutton received from the Governor of Illinois a certificate entitled "Rights of Citizenship," granted pursuant to ch. 108, Ill. Rev.Stat. § 49 (1952),[1] which purported

---

1. Ch. 108, Ill.Rev.Stat. § 49 (1952) provides in pertinent part:

"The Governor shall have the right to grant any person that has been, now is, or may be hereafter confined in the penitentiary, reformatory or correctional institution, whom he shall deem a proper person to enjoy the privilege, a certificate of restoration to all his rights of

to restore to him all rights of citizenship forfeited due to his aggravated battery conviction.[2]

On June 19, 1968, the Omnibus Crime Control and Safe Streets Act was enacted. Title VII, concerning receipt and possession of firearms, provided in pertinent part that all persons having been convicted of a crime punishable by a term of imprisonment exceeding one year were prohibited from receipt, possession or transportation of a firearm in commerce or affecting commerce. Section 1203(2) of the Act provided that a convicted felon was not subject to Title VII prohibitions if he received a state or federal executive pardon of the underlying offense and secured from the pardoning executive an express authorization to receive, possess or transport a firearm in commerce.[3]

Sometime during 1968, Sutton applied to the Firearm Owners Identification Division of the Illinois State Department of Law Enforcement for issuance of a Firearm Owner's Identification Card. Under Illinois law, with exceptions not pertinent here, no person may acquire or possess any firearm or firearm ammunition within the state without having in his possession such card. Ch. 38, Ill.Rev. Stat. § 83–2(a) (1970) (Laws 1967 P. 2600, § 2, eff. Jul. 1, 1968). Sutton's application was deferred because five years had not elapsed since his release from the penitentiary on his 1963 conviction—a required condition for issuance of a card. Ch. 38, Ill.Rev.Stat. § 83–4(a)(2)(ii) (1970) (Laws 1967 P. 2600, § 4, eff. Jul. 1, 1968). On November 2, 1970, Sutton received a card.

On two dates in December of 1970 and 1971, Sutton, using his state firearm card, purchased from a store a .38 caliber Colt Diamondback revolver and a single shot Ithaca .22 caliber rifle. These receipts constituted the bases of the two counts on which he was convicted.

## II.

Sutton first asserts that, under the law of Illinois, the Rights of Citizenship restoration he received in 1966 constituted a full and complete pardon which had the effect of both restoring his rights of citizenship and obliterating the very existence of that conviction. He argues

---

citizenship, excepting such privileges as, by reason of conviction for infamous crime, or otherwise, are thereafter denied such person by the constitution of this State . . .."

2. The text of the Certificate of Restoration received by defendant was as follows:

"To all to whom these presents shall come: Greeting. Whereas Clifford Sutton was convicted of the crime of Aggravated Battery at the March term A.D. 1963 of the Circuit Court of Clay County and was sentenced therefor to the confinement of the penitentiary and Whereas it has been represented to me that he is a proper person to be restored to all of his rights of citizenship, Now Know Ye that I, Otto Kerner, Governor of the State of Illinois, by virtue of the authority vested in me by the laws of this state, do hereby restore the said Clifford Sutton to all his Rights of Citizenship which may have been forfeited by his said conviction."

3. Pub.L. 90–351, Title VII, §§ 1201–1203, June 19, 1968, 82 Stat. 236:

§ 1202. Receipt, possession, or transportation of firearms—Persons liable; penalties for violations.

(a) Any person who—
(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . .

\* \* \* \* \* \*

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

\* \* \* \* \* \*

(c) As used in this title—

\* \* \* \* \* \*

(2) "felony" means any offense punishable by imprisonment for a term exceeding one year . . .

§ 1203. Exemptions.
This title shall not apply to—
(1) Any prisoner who by reason of duties connected with law enforcement has expressly been entrusted with a firearm by competent authority of the prison; and
(2) Any prisoner who has been pardoned by the President of the United States or the chief executive of a State and has expressly been authorized by the President or such chief executive, as the case may be, to receive, possess or transport in commerce a firearm.

that, under these circumstances, he was not a "person . . . convicted by a court . . . of a State . . . of a felony" as required under § 1202(a) and thus was entitled to acquittal as a matter of law.

### A.

Under Illinois law in force on February 23, 1966, the Governor of the state, in his discretion, had absolute power to dispense executive clemency in the nature of pardons, commutations, and reprieves, subject only to legislative regulation of the manner of application therefor. Ill.Const. Art. 5, section 13 (1870).[4] The Government argues that the chapter 108 provision employed here was designed to provide only a limited and semiautomatic return of statutorily denied rights of citizenship to convicted felons upon satisfactory completion of the imposed punishment, as opposed to a full pardon, and thus would not have the reach attributed to it by the defendant. Cf. United States v. Barrett, 504 F.2d 629, 632–34 (6th Cir. 1974), cert. granted, 420 U.S. 923, 95 S.Ct. 1117, 43 L.Ed.2d 392.

The wording of the statute and of the actual certificate would seem to support such a distinction. The Illinois courts, however, seem to have rejected any such limitation on a chapter 108 certificate of restoration. Thus, in People ex rel. Stine v. City of Chicago, 222 Ill.App. 100 (1921), such a certificate was given the following operation and effect:

4. At that time, two distinct procedures were provided: ch. 108, Ill.Rev.Stat. § 49 (1952) "certificate of restoration"; and ch. 104½, Ill. Rev.Stat. (1935) application for pardon, reprieve, and commutation. Both procedures were substantially modified in 1973 when Illinois enacted the Uniform Code of Corrections. Compare ch. 38, Ill.Rev.Stat. §§ 1003–3–13; 1005–5–5 (1973).

5. The government has argued that the fact that Sutton was required to wait five years after his release from prison before receiving his Firearm Owner's Identification Card establishes that Illinois did not view a Restoration of Rights as a full and complete pardon obliterating the fact of conviction. See, ch. 38, Ill.Rev.Stat. § 83–4(a)(2)(ii) (Supp.1974–75).

"A pardon is an act of grace by which an offender is released from the consequences of his offense. . . . In contemplation of the law, it so far blots out the offense *that afterwards it cannot be imputed to him to prevent the assertion of his legal rights.* It gives him a new credit and capacity, and rehabilitates him to that extent in his former position." Knote v. United States, 95 U.S. 149 [24 L.Ed. 442] [Emphasis in original.]

\*   \*   \*   \*   \*   \*

We are of the opinion that the certificates issued by the Governor of the state in conformity with the statutes above mentioned [ch. 108, Ill.Rev.Stat. § 49] were to all intents and purposes a full pardon of the petitioner, securing to the petitioner all the benefits of a pardon. . . . 222 Ill.App. at 104.

See also, People ex rel. Johnson v. George, 186 Ill. 122, 57 N.E. 804, 806 (1900). The government has failed to offer any Illinois authority disputing or questioning this characterization of a certificate of restoration.[5] We therefore conclude that, while the Illinois law on the matter is far from clear, we will resolve doubts in favor of defendant and assume that a certificate of restoration granted under ch. 108, Ill.Rev.Stat. § 49 (1952) is a full pardon which operates both to restore lost citizenship rights and obliterate the fact of conviction.[6]

There, however, is nothing in the record showing that the Illinois Firearms Owners Identification Division was aware of the existence of Sutton's certificate. Moreover, we note that the actions of an Illinois administrative agency, without more, could not supersede the judicial construction of the Restoration as a full pardon.

6. We note that subsequent federal authorities have questioned the broad language of Knote and similar cases, relied on by the Illinois court in Stine, as to the effect of a pardon in blotting out the offense. Cf. Richards v. United States, 89 U.S.App.D.C. 354, 192 F.2d 602, 607 (1951), cert. denied, 342 U.S. 946, 72 S.Ct. 560, 96 L.Ed. 703 (1952); United States v. Swift, 186 F. 1002, 1016–18 (N.D.Ill.1911).

### B.

Nevertheless the power of the federal government, in imposing federal disabilities predicated upon prior conviction, to accord a full and unconditional state pardon an effect different from that granted by the issuing state is clear. In *Thrall v. Wolfe,* 503 F.2d 313 (7th Cir. 1974), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975), this court relied upon *Carlesi v. New York,* 233 U.S. 51, 57, 34 S.Ct. 576, 58 L.Ed. 843 (1914), wherein the Supreme Court permitted a *state* to impose second offender status upon an accused based on a prior *federal* conviction for which an unconditional Presidential pardon had been granted. We held that it necessarily followed that "in imposing on convicted felons an otherwise appropriate disqualification from regulated activity, Congress has the power to accord a state pardon differing effects in differing contexts, depending on its objectives in creating the disqualification. Neither the inherent nature of a pardon nor full faith and credit require that a state pardon automatically relieve federal disabilities." 503 F.2d at 316.[7] Thus, the question presented is a narrow one of statutory interpretation concerning the effect Congress intended to accord state pardons in enacting Title VII's prohibitions.

■ Defendant argues that in any event § 1203(2) (see note 3, *supra*) reveals a congressional intent to accord full and unconditional state pardons full and controlling effect for purposes of federal Title VII. We cannot agree.

Section 1203(2) provides that, in order for a convicted felon to be exempted from the absolute prohibition imposed by § 1202(a)(1) against receipt, possession or transportation of a firearm, two conditions must be met: (1) the felon must obtain a state or federal executive pardon of the underlying offense and; (2) the felon must receive an express authorization from the pardoning executive to receive, possess or transport a firearm in commerce. Thus, Congress has resolved to accept the full effect of a state pardon as controlling only when it is accompanied by such express authorization.

Defendant has failed to comply with this second condition imposed by § 1203(2). The Restoration of Rights he relies on, issued prior to the statute's enactment, understandably contains no such express authorization. Moreover, the record is clear that, since June 19, 1968, he has not sought or received any express gubernatorial authorization to receive, possess or transport a firearm.[8]

Defendant argues that § 1203(2) should be construed as operating prospectively, establishing only the form of pardon required for felons seeking relief after June 19, 1968. He asserts that it would be unreasonable to require a pardon granted before enactment of the provision to contain the specified language and that, in any event, the requirement is redundant when applied to a full, unconditional pardon which implicitly restores all the rights possessed by a citizen. Cf. *United States v. One Lot of Eighteen Firearms,* 325 F.Supp. 1326, 1328–29 (D.N.H.1971).

See also, *People v. Rongetti,* 395 Ill. 580, 70 N.E.2d 568 (1947); *People ex rel. Johnson v. George, supra,* 57 N.E. at 806.

7. While *Wolfe* dealt with the effect of a state pardon on federal licensing requirements imposed in Title IV, 18 U.S.C. § 923, *Carlesi* makes clear that Congress may equally accord differing treatment to state pardons in a criminal context.

8. We do not view Sutton's Illinois Firearm Owner's Identification Card as constituting such an express gubernatorial authorization. The gun card was issued automatically to Sutton after five years had passed from his last release from prison pursuant to an Illinois statute. No individual consideration was given as to whether, in light of the federal proscription of receipt, possession, or transportation of a firearm in commerce after conviction of a felony, Sutton was qualified to receive authorization. We do note with concern, however, the unfairness that may result when a state, which has enacted more limited gun control legislation than Title VII, issues to prior felons authorization to receive and possess firearms for state purposes while failing to inform them of the independent and continuing federal proscription.

We cannot agree. The statute in question is clear and contains no exception from the requirement of express authorization for those whose pardon predates the statute's enactment.[9]

In enacting Title VII, Congress made express findings that felons who receive, possess, or transport firearms represent a serious threat to the nation's continued stability and vitality. 18 U.S.C. App. § 1201. The statutory scheme clearly reveals a congressional intent to grant only limited power to state executives to relieve the federal disability by use of state pardon power. Under § 1203(2), a state pardon, regardless of its effect in restoring all state-imposed disqualifications, relieves federal § 1202 liability only when the governor has considered the federal policies underlying the Act, as set forth in the congressional findings, and expressly concluded that they do not apply to the particular candidate for state pardon. State-imposed disabilities are not necessarily coextensive with or motivated by similar concerns as those imposed by Congress.[10] Thus the requirement for express authorization, is not redundant but serves the function of assuring that, before a state executive grants relief from a federally-imposed liability, the national concerns are considered and addressed.[11] These considerations apply equally whether the pardon in question was granted before or after the statute's enactment and defendant's failure to obtain the required executive authorization as a supplement to his pardon precludes him from relying upon it for exemption from § 1202(a) liability.

### C.

■ Sutton next urges that Title VII, so interpreted, constitutes an *ex post facto* law in contravention of Article I, Section 9 of the constitution. We reject this argument. The statute does not criminalize an act done before its passage which, when committed, violated no law. *Calder v. Bull,* 3 U.S. 386, 3 Dall. 385, 388, 1 L.Ed. 648 (1798). Defendant was convicted of receiving a firearm in commerce or affecting commerce *after* June 19, 1968 without satisfying the requirements of exemption set forth in § 1203(2). It is well established "that

---

**9.** Defendant relies upon the statements on the Senate floor by Title VII's sponsor, Senator Long:

"[T]here is absolutely no doubt in my mind that, applied purely prospectively to people who are convicted of crimes in the future, the amendment could not be subject to any challenge whatever. It is likely that one might argue that by applying this amendment to people who have been convicted of crimes prior to this date and pardoned by the pardoning authority, their rights might be violated. That is something that can be studied in conference." 114 Cong.Rec. 14,774 (1968).

Title VII was added by floor amendment and was not commented upon by any committee. Statements by the bill's sponsor may be helpful to fill the void, but the passage relied upon is unclear and could hardly serve to control over the provision's unambiguous language. Moreover, just prior to the statement, in response to a question from Senator McClellan whether a man who "had been a felon and had been pardoned, without any condition in his pardon . . . granting him the right to bear arms . . . could own a shotgun for purposes of hunting." Senator Long replied: "No he could not . . . possess it." *Id.*

**10.** When Sutton received his state pardon in 1966, for instance, Illinois law only prohibited sale of a firearm to a convicted felon within five years of his release from the penitentiary. Ch. 38, Ill.Rev.Stat. § 24–3(c) (1964). There was no state prohibition of possession of a firearm by convicted felons. Even at present, Illinois law prohibits only possession or purchase of a firearm by a convicted felon for five years after conviction or release from the penitentiary. Ch. 38, Ill.Rev.Stat. §§ 24–3(d), 24–3.1(a)(3) (Supp.1974–75). See note 7, *supra.*

**11.** Section 1203(2) also requires that Presidential pardons contain the express authorization to receive, possess or transport a firearm in commerce. We do not reach the question of whether this requirement may limit the effect of an unconditional pardon or would constitute a prohibited legislative interference with the executive's constitutionally provided pardon power. United States Const., Art. II, Section 2. *Cf. Schick v. Reed,* 419 U.S. 256, 95 S.Ct. 379, 42 L.Ed.2d 430 (Dec. 24, 1974).

where Congress has rationally concluded that persons who have demonstrated a tendency in the past to engage in conduct that Congress has the power to proscribe, Congress may restrict such future activities without violating the Ex Post Facto prohibition." *United States v. Karnes,* 437 F.2d 284, 289–90 (9th Cir. 1971), *cert. denied,* 402 U.S. 1008, 91 S.Ct. 2189, 29 L.Ed.2d 430; *cf. United States v. Nasser,* 476 F.2d 1111, 1117 (7th Cir. 1973).

### III.

■ Defendant next asserts that there was insufficient evidence before the jury to support the verdict of conviction.

He first argues that § 1202(a) requires proof beyond a reasonable doubt that an accused actually knew that he was "a person  .  .  .  convicted by a court .  .  .  of a felony" at the time he received, possessed or transported a firearm and that, in light of his receipt of the Restoration of Rights certificate and in the absence of proof of awareness of Title VII, such a finding is not supported.

We disagree. First, we note that, while testifying, Sutton admitted that at the times he received the two guns, he knew that he had been convicted of a felony. Moreover, the language of Title VII does not require such knowledge, *cf. United States v. Freed,* 401 U.S. 601, 609, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971).[12] The courts have consistently held that a defendant need only be shown to have knowingly received or possessed the firearm. *United States v. Horton,* 503 F.2d 810, 813 (7th Cir. 1974); *United States v. Wiley,* 478 F.2d 415, 417–18 (8th Cir. 1973); *United States v. Crow,* 439 F.2d 1193, 1195 (9th Cir. 1971),

*vacated on other grounds,* 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657; *United States v. Snell,* 353 F.Supp. 280, 284 (D.Md.1973); *United States v. One Lot of Eighteen Firearms, supra,* 325 F.Supp. at 1328. But, *cf. United States v. Renner,* 496 F.2d 922, 924–26 (6th Cir. 1974), limited to 18 U.S.C. § 922(h)(1) in *United States v. Cowper,* 503 F.2d 130, 132 (6th Cir. 1974).

■ Defendant next argues that there was an insufficient showing of an interstate commerce nexus to support the jury's verdict. Evidence that a firearm "has previously traveled in interstate commerce" is sufficient to establish the requisite commerce element for the offense of receiving a firearm in commerce or affecting commerce. *United States v. Bass,* 404 U.S. 336, 350, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *United States v. Walker,* 489 F.2d 1353, 1357 (7th Cir. 1973), *cert. denied,* 415 U.S. 982, 94 S.Ct. 1574, 39 L.Ed.2d 879. The record contains ample evidence that both firearms had moved in interstate commerce prior to Sutton's receipt.

### IV.

Defendants also present a number of asserted trial errors which, they argue, require reversal. We have considered each carefully and conclude they have no merit. Our disposition of each is set forth in a memorandum order subject to Circuit Rule 28, filed at the same time as this opinion and furnished to counsel. Decision of those matters lacks sufficient precedential value to be reported. *United States v. Ray, et al.,* 514 F.2d 418, 422 (7th Cir. 1975).

The judgment appealed from is affirmed in all respects.

---

12. *United States v. Squires,* 440 F.2d 859, 863 (2nd Cir. 1971) does not support Sutton. That case dealt with prosecutions under 18 U.S.C. §§ 922(a)(6) and 924, which made knowledge a specific element of the crime proscribed.