STATE of Iowa, Appellee,

v.

Johnny Ray HALL, Appellant.

No. 65044.

Supreme Court of Iowa.

Feb. 18, 1981.

Philip F. Miller, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Richard L. Cleland, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, McGIVERIN, LARSON and SCHULTZ, JJ.

LeGRAND, Justice.

In 1972 defendant was convicted of robbery and sentenced to the penitentiary. He was paroled in 1974 and on May 5, 1976, he was granted a restoration of citizenship by the governor of this state. Defendant now stands convicted of possession of a firearm in violation of the statute which prohibits convicted felons from possessing such a weapon. Section 724.26, The Code.

The several issues raised all involve in greater or lesser degree the basic argument that this judgment cannot stand because possession of a firearm by a convicted felon

was not a crime when defendant was convicted in 1972 nor when he was paroled in 1974 nor when his citizenship was restored in 1976. The statute was enacted by the General Assembly to become effective on January 1, 1978. It provides as follows:

Any person who is convicted of a felony in any state or federal court and who subsequently possesses, receives, or transports or causes to be transported a firearm or offensive weapon is guilty of an aggravated misdemeanor.

The following section excludes from the operation of section 724.26 those convicted felons who have been restored to rights of citizenship by an executive order if "expressly authorized by ... such chief executive to receive, transport or possess firearms or destructive devices." In the present case, of course, there was no such provision because the statute had not been enacted when defendant received his restoration of citizenship.

Defendant asks us to decide three issues. He claims first that he was entitled to a directed verdict; he argues next that the trial court erred in the instruction defining possession; and finally he alleges an abuse of discretion in imposing a sentence of two years for this offense.

I. Several Des Moines detectives, armed with a search warrant went to defendant's residence to search for stolen merchandise. None was found, but the officers observed three guns in a gun rack. In response to a question, defendant said he owned the guns. After defendant had admitted he had a felony record, he modified his statement to claim he had given the guns to his mother.

At trial, both defendant and his mother testified that defendant gave her the guns in July of 1972. She said she kept them in her own home until she moved in with defendant, at which time she brought the guns with her. Both testified the guns were kept in a locked case, for which she had the only key. Defendant further testified that the officers had to break the lock on the gun case in order to take the guns. Defendant argues his mother was in possession of the guns and that his conviction should be reversed for that reason.

■ The detectives testified to defendant's conflicting statements concerning ownership of the gun. They also testified that the gun case was neither locked nor broken into. In view of this direct conflict in the testimony plus the evidence that the guns were in defendant's home, a consideration of all the evidence in the case could convince a rational jury of defendant's guilt beyond a reasonable doubt.

This, however, does not end defendant's argument concerning his right to a directed verdict. He claims, too, that because he was restored to his rights of citizenship before the enactment of section 724.26, The Code, he cannot be convicted of violating its terms.

We have had only one case involving this statute since its enactment. *State v. Rupp*, 282 N.W.2d 125 (Iowa 1979). In that case we held that the statute is constitutional and adopted the rationale of *Marchese v. California*, 545 F.2d 645, 647 (9th Cir. 1976) in explaining that the legislature is justified in prohibiting convicted felons from possessing firearms. A new and narrower question now confronts us: does this statute apply to those convicted before its enactment as well as to those convicted thereafter? We hold it does.

■ Defendant's argument is that he was restored to all his civil rights in 1976; one of those civil rights then entitled him to possess firearms; subsequent enactment of section 724.26 did not take away this existing right. Implicit in this argument is the claim all those convicted of a felony prior to January 1, 1978, the effective date of the statute, are exempt from its provisions because until then there was no prohibition against such possession by anyone. We refuse to believe that was the legislative intent.

Neither do we believe this result gives retrospective application to section 724.26, The Code. Defendant was found guilty of possessing firearms *after* the effective date of the statute. His status as a felon was fixed prior to that date, but the proscribed

conduct—the act which constituted the crime—occurred almost two years after the statute took effect. *See United States v. Sutton*, 521 F.2d 1385, 1390 (7th Cir. 1975).

The executive order restoring defendant's citizenship rights is here set out:

## RESTORATION OF CITIZENSHIP

\* \* \* \* \* \*

I do hereby restore the said JOHNNY RAY HALL to all the rights, privileges and immunities which were forfeited by reason of said conviction.

This Restoration of Citizenship shall not be construed as a Pardon or as a remission of guilt or forgiveness of the offense, and shall not operate as a bar to greater penalties for second offenses or subsequent convictions or conviction as a habitual criminal.

This ORDER is granted upon the recommendations of

IOWA BOARD OF PAROLE

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused to be affixed the Great Seal of the State. Done at Des Moines, this 5th day of May in the year of our Lord nineteen hundred and seventy six.

S/S ROBERT D. RAY
GOVERNOR

It is significant that the executive order was not a pardon nor was it intended to forgive the offense or minimize the consequences of it. For all practical purposes, the restoration to citizenship rights is immaterial. With or without such restoration, a former felon could have possessed firearms prior to January 1, 1978. Now *no* felon may do so unless permitted by executive order as directed in section 724.27, The Code. We presume, without deciding, that defendant could have asked the governor to amend the executive order to so provide. *Sutton*, 521 F.2d at 1389. Having failed to do so, defendant, like every other felon, is bound by section 724.26 for possession of firearms after January 1, 1978.

Several federal courts have considered this problem in interpreting the Omnibus Crime Control and Safe Streets Act of 1968. *United States v. Matassini*, 565 F.2d 1297, 1306–07 (5th Cir. 1978); *United States v. Sutton*, 521 F.2d 1385, 1390–91 (7th Cir. 1975), to which reference has already been made; *cf. United States v. Bergeman*, 592 F.2d 533, 536–37 (9th Cir. 1979) (broad purpose of such statutes would be defeated if those whose convictions had been expunged under state law were excluded).

In *Sutton*, a conviction was upheld under facts almost identical with those now before us. In *Matassini*, the court held defendant, whose pardon by the governor of Florida for a prior felony occurred twenty-one years earlier, could not be prosecuted because under Florida law a pardon operated as a total forgiveness for the crime itself. The issue in that case was whether the statute applies to "a convicted felon who had received a *full and complete pardon* under state law prior to the enactment of the Omnibus Act." (Emphasis added). 565 F.2d at 1300.

However, the *Matassini* court also had this to say at 565 F.2d 1307:

We believe it is clear that Congress, in enacting [the statute forbidding convicted felons from possessing firearms], intended the proscriptions . . . to reach persons convicted of felonies prior to 1968, [the effective date of the act.] We also believe that Congress intended that with respect to convicted felons pardoned after the enactment of the Omnibus Act, only those felons whose pardons contained a clear indication of express authorization would be permitted to receive, possess, or transport in commerce any firearm. Finally, we are prepared to believe that with respect to convicted felons pardoned prior to 1968, Congress intended to permit receipt or possession of firearms only following a determination that the individual involved did not present a threat to public safety.

The court then concluded the act should not apply to pardons granted prior to its effective date because there was no showing congress "intended to require [such] pardons . . . to include *words* of express

authorization to evidence" that result. (Emphasis in original.) *See* 565 F.2d at 1307.

Our case is distinguishable from *Matassini*. The restoration of citizenship specifically disavowed any intent to grant a pardon or to operate as a "remission of guilt."

Both *Matassini* and *Sutton* set out that no ex post facto problem is involved in such legislation. The result depends solely on statutory construction. We are convinced our statute was designed to include as offenders *all* felons who possess firearms after January 1, 1978, unless they come within the exception set out in section 724.27, The Code.

II. Defendant's argument concerning the instruction defining possession is equally groundless. The trial court gave the following instruction on possession: "The term possession as used in these instructions means the having or keeping of a firearm by the defendant. It must be a conscious possession and control of the weapon."

Defendant requested that the court include the following language: "He must exercise dominion and control over it or have the actual care and management of it."

Defendant's argument is that the portion which he requested is part of the uniform instruction and that it was error not to give it. We do not agree. We see little the requested portion would have added to the instruction as given. The court told the jury possession must be "conscious" and must include "control." What defendant requested was but a repetition of that in somewhat different form. We have said the trial court is not limited to any particular language in giving instructions as long as the correct principles are explained. *State v. Savage*, 288 N.W.2d 502, 508 (Iowa 1980). We believe this instruction meets that test. We have not overlooked the fact that the Iowa Uniform Jury Instructions recommend the language requested by defendant. Perhaps its inclusion would improve the product. All we say is that its omission in this case was not reversible error.

Defendant also says now the court should have given an instruction on constructive as well as actual possession; but at trial he objected when the state requested such an instruction. He cannot now use that as a ground for reversal. He has waived his right to do so. *State v. Jackson*, 223 N.W.2d 229, 231–32 (Iowa 1974); *State v. Smith*, 215 N.W.2d 225, 227 (Iowa 1974); rule 196, R.Civ.P.

III. The last issue deals with the severity of punishment. The crime is an aggravated misdemeanor with a maximum penalty of two years imprisonment. Section 903.1(1), The Code. The court imposed that punishment and set out its reasons for doing so. We have examined the record and we have reviewed the trial court's sentence. In such cases we reverse only for an abuse of discretion. *State v. Luedtke*, 279 N.W.2d 7, 8 (Iowa 1979). While other judges might have imposed a lesser sentence, we cannot say the trial judge abused his discretion in rejecting defendant's plea for leniency.

Finding no reversible error, we affirm the judgment.

AFFIRMED.