**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Willie Mose HORTON, Defendant-
Appellant.**

**No. 74–1178.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1974.

Decided Oct. 11, 1974.

Arnette R. Hubbard, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman and Walter Jones, Jr., Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

CUMMINGS, Circuit Judge.

After a bench trial, defendant was found guilty on Count I of a 2-count indictment charging him with knowingly receiving firearms in commerce as a convicted felon in violation of 18 U.S.C. App. § 1202(a)(1).[1]   Count I alleged

---

1. 18 U.S.C.App. § 1202(a)(1) provides:
"(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any politi-

that defendant had been previously convicted of felonies in the Northern District of Illinois and the Western District of Michigan and subsequently received in commerce a Charles Daly shotgun with the serial number 1888. A four-year probation sentence was imposed by the court below.

The evidence showed that on November 8, 1971, Internal Revenue Service Special Agents Di Pasquale and Johnson were admitted into defendant's apartment upon presenting their identification cards. Di Pasquale told defendant that it was the agents' duty to investigate criminal tax fraud. Di Pasquale read the following warning to defendant:

"As a special agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue Laws and related offenses.

"In connection with my investigation of your tax liability, I would like to ask you some questions. However, first I advise you under the Fifth Amendment of the Constitution of the United States, I cannot compel you to answer any question or submit any information if such answers or information might tend to incriminate you in any way.

"I also advise you that anything which you say and any information which you submit may be used against you in any criminal proceedings which may be undertaken.

"I advise you further that you may, if you wish, seek the assistance of an attorney before responding."

Defendant denied there was any tax fraud and then identified his 1964–1970 income tax returns. He said his source of income was from gambling, including cards, policy and numbers.

Di Pasquale then asked defendant what his hobbies were, and he replied that he hunted birds in the Cedar Rapids, Iowa, area with a 20-gauge shotgun. Di Pasquale asked to examine the gun, and defendant produced a 20-gauge Charles Daly shotgun with the serial number 1880 or 788.[2]

After Di Pasquale handed the shotgun back to defendant, he said he kept as many as five weapons at once. Di Pasquale asked defendant about his involvement in narcotics, but he declined to discuss that.

Thereafter, Di Pasquale informed an Assistant United States Attorney what happened at the interview and was advised that "there was sufficient amount of evidence for a search warrant."

On November 9, 1971, a United States Commissioner issued an arrest warrant and a search warrant with respect to defendant and his premises. Di Pasquale then accompanied three other agents to defendant's home and told him that he was under arrest for a federal firearms violation and that a warrant had been issued. One of the agents told defendant of his constitutional rights, and then the agents started to search the apartment. Di Pasquale found the Charles Daly shotgun in a bedroom between two dressers and seized the weapon.

Defendant argues that the search warrant was invalid on two grounds and that, therefore, the district court erred in denying his motion to suppress the shotgun as evidence. He first argues that the affidavit accompanying the search warrant was deficient. Secondly, he contends that the information that led to the issuance of the search warrant was unconstitutionally obtained because the warnings given by Special Agent Di Pasquale at the November 8 visit during

---

cal subdivision thereof of a felony,
* * *

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or im-

prisoned for not more than two years, or both."

2. At the trial, Di Pasquale identified the weapon and read the serial number as 1888, which was the serial number given in the indictment.

which defendant produced his shotgun were inadequate.

■ The affidavit in support of the search warrant outlined the November 8 visit to defendant's apartment and described the shotgun in question. It failed to mention that defendant had previously been convicted of a felony, so that the possession of the shotgun would be in violation of 18 U.S.C. App. § 1202(a)(1). However, at the same time the affidavit for the search warrant was presented to the United States Commissioner, Di Pasquale presented a sworn complaint to the Commissioner which showed that defendant had been convicted of felonies in the Northern District of Illinois on February 15 and April 3, 1957, resulting in 5-year and 10-year sentences respectively upon guilty pleas. The Commissioner filed an affidavit that when, as here, a complaint, arrest warrant and search warrant with supporting affidavits are presented to him at the same time by an affiant, the Commissioner "would first swear the affiant and then read all the documents together." In addition, Di Pasquale filed an affidavit which verified that on the occasion in question the Commissioner followed his normal practice of reading all the documents before issuing the warrants. We agree with the district judges who passed on defendant's first and second suppression motions that the Commissioner could properly consider the affidavit and complaint together, that he did so, and that there was, therefore, probable cause to issue the search warrant. United States v. Bozza, 365 F.2d 206 (2d Cir. 1966); United States v. Nolan, 413 F.2d 850, 853 (6th Cir. 1969). We are reinforced in our conclusion because defendant did not attempt to cross-examine either the Commissioner or Di Pasquale regarding the affidavits, nor does he attack their contents. Our decision in United States v. Whitlow, 339 F.2d 975 (7th Cir. 1964), is not to the contrary, for it did not involve the propriety of a magistrate's contemporaneous consideration of information in sworn documents other than the affidavit for the search warrant before issuing the warrant.

■ Defendant next argues that his motion to suppress should have been granted because Di Pasquale was "acting as a general criminal investigative agent" of the Government and yet only warned defendant that one of his functions was to investigate possible criminal violations "of the Internal Revenue Laws and related offenses," and that he was planning to ask defendant some questions in connection with the investigation of his "tax liability." In his view, therefore, the search warrant must fall because the information in the supporting affidavit relating to the shotgun was procured from defendant after a constitutionally deficient warning.

The evidence shows that the agents already knew defendant was a convicted felon. Di Pasquale testified that the hobby question he put to defendant came from an I.R.S. form questionnaire. The reason for the standard hobby question is "to determine large expenditures" to use on a net worth or expenditure method to ascertain if a taxpayer spends more than shown on his tax returns. Accordingly, the agent put the question to defendant about hobbies to find where defendant "spent his money." He asked about this shotgun to discover whether defendant was talking about an expensive weapon and to learn the outlay of cash made to buy the five or so weapons owned by defendant. Since the testimony shows that the interrogation about weapons was tax-related, the warning given to defendant was sufficient. Nor was there anything improper in Di Pasquale's reporting the possible criminal violation committed by defendant to the United States Attorney. United States v. Fruchtman, 421 F.2d 1019, 1022 (6th Cir. 1970), certiorari denied, 400 U.S. 849, 91 S.Ct. 39, 27 L.Ed 2d 86. In sum, the information upon which the warrant was secured was not improperly obtained.

■ Defendant's next argument is that the evidence was insufficient.

However, through a stipulation as to the testimony of officer Rooney, Special Agent Noack and fingerprint analyst Keckler, the Government showed that the defendant was a convicted felon. Another witness testified that the gun in question had been shipped from New York to Iowa in 1969. Defendant's possession of a firearm that previously moved in interstate commerce satisfies the statute. United States v. Walker, 489 F.2d 1353, 1357 (7th Cir. 1973), certiorari denied, 415 U.S. 982, 94 S.Ct. 1574, 39 L.Ed.2d 879.

Since the statutory language does not require knowledge (see note 1 *supra*), defendant's claimed ignorance of the law is no defense. Braswell v. United States, 224 F.2d 706, 710 (10th Cir. 1955). For a contrary rule, defendant relies on Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228. There the Court accepted an ignorance of the law defense based on the notice requirements of the Due Process clause because the case involved "conduct that is wholly passive—mere failure to register * * * unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed." Unlike Mrs. Lambert, this defendant has not shown that he was "wholly passive and unaware of any wrongdoing." 355 U.S. at 228, 78 S.Ct. at 243. Moreover, the Supreme Court refused to follow *Lambert* in a case involving the receipt or possession of an unregistered firearm. United States v. Freed, 401 U.S. 601, 608–609, 91 S.Ct. 1112, 28 L.Ed.2d 356. Interestingly enough, Justice Douglas wrote the opinion of the Court in both cases. In *Freed,* he distinguished *Lambert,* stating "Being in Los Angeles is not *per se* blameworthy," whereas he noted that the National Firearms Act involves the possession of dangerous offensive weapons. In our judgment, the *Lambert* rule is also inapplicable to this statutory provision.

 For a conviction to stand under this statute, the defendant must be shown knowingly to possess a gun. The trial judge so found here, and this finding is not assailed. The Government need not show that defendant knew the gun had traveled in interstate commerce or that he intended to violate the statute. United States v. Wiley, 478 F.2d 415, 418 (8th Cir. 1973), vacated and remanded on other grounds, 404 U.S. 1009, 92 S.Ct. 686, 30 L.Ed.2d 657; see also United States v. Crow, 439 F.2d 1193, 1195 (9th Cir. 1971), vacated and remanded on other grounds, 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657.[3]

The judgment of conviction is affirmed.

---

3. Defendant's reliance on United States v. Squires, 440 F.2d 859 (2d Cir. 1971), is misplaced, for there the statute under consideration made knowledge a specific element of the crime proscribed.