**UNITED STATES of America,
Appellee,**

v.

**Marce BELL, Defendant-Appellant.**

**No. 187, Docket 75–1207.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 5, 1975.

Decided Oct. 6, 1975.

Frederick P. Hafetz, Goldman & Hafetz, New York City, for defendant-appellant.

Jeremy G. Epstein, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., John D. Gordan, III, Asst. U. S. Atty., of counsel), for appellee.

Before KAUFMAN, Chief Judge, and MULLIGAN and GURFEIN, Circuit Judges.

MULLIGAN, Circuit Judge:

The defendant Marce Bell appeals from a judgment of conviction entered on May 19, 1975 in the United States District Court for the Southern District of New York after a one-day non-jury trial before the Hon. Dudley B. Bonsal, United States District Judge. Bell was charged in a one count indictment with receiving, possessing and transporting in commerce or affecting commerce a firearm after having been convicted of a felony in violation of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. App. § 1202(a). Upon his conviction he was sentenced to a term of two years' imprisonment and is presently free on bail pending appeal.

I

On October 7, 1974 agents of the New York Drug Enforcement Task Force obtained a warrant to search Bell's apartment in the Bronx. The affidavit in support of the warrant indicated that a reliable informant had observed 10 ounces of heroin at that location. Bell was also observed by the informant to be carrying a .38 caliber revolver. The Task Force set up a surveillance team at the Bell apartment house and observed him and a woman companion leave the building and approach his car which was parked across the street and which carried New Jersey license plates. While Bell was reaching into the trunk to change a flat tire he was approached by an agent who noticed a bulge in Bell's waistband. The agent knew that Bell was reported to be armed and reached for the object which proved to be a loaded .38 caliber revolver. Bell was arrested and given the appropriate warnings. Bell's motion to suppress the gun was denied below and no suppression issue has been raised on this appeal. Bell was then taken to his apartment and the search warrant was executed. At that time Bell advised the agents that he had purchased the gun in Virginia several years before. He repeated this admission to an Assistant United States Attorney in an interview on October 8, 1974 just prior to his arraignment. The revolver bore the legend "I.N.A., Made in Brazil." There was evidence below that I.N.A. was an abbreviation for "Industrial National Arms," a Brazilian corporation now defunct and its records destroyed. It is not disputed that Bell had been previously convicted of manslaughter in the Supreme Court, New York County and was sentenced to imprisonment for a term of five to seven years.

Hence, the only issue on this appeal is whether Bell's possession of a gun which was manufactured in Brazil and purchased in Virginia some years before constitutes a sufficient nexus with interstate commerce to come within the language of the statute, 18 U.S.C. App. § 1202(a).

II

 The language of the statute which is pertinent to the inquiry provides:

Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses, or transports in commerce or affecting.

commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

The court was first called upon to construe the statute in *United States v. Bass,* 434 F.2d 1296 (2d Cir. 1970). In that case the Government urged that the phrase "in commerce or affecting commerce" modified "transports" alone but had no application to "receives" or "possesses." This court, which characterized the legislative history of the statute as "unedifying and inadequate," 434 F.2d at 1298, rejected the Government's interpretation which we had indicated would create serious constitutional doubts. We concluded that receipt and possession as well as transportation of the firearm must be shown to have been "in commerce or affecting commerce." Since the Government had offered no proof of any interstate movement, there was in *Bass* no occasion to discuss the question now before us, i. e., what degree of interstate commerce involvement is necessary to sustain a conviction.

The holding of this court in *Bass* was affirmed on appeal in *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), with Mr. Justice Marshall writing the opinion for the Court in which Justices Douglas, Stewart and White concurred fully; Justice Brennan concurred in part, and Justice Blackmun filed a dissenting opinion in which Chief Justice Burger joined. The majority, although characterizing the statute as ambiguous (the Government in fact conceded that it was not a model of logic or clarity), held that an interstate nexus was required for all three offenses proscribed—transportation, receipt and possession. The Court did not reach the constitutional issue raised below but grounded its holding on two policies: first, in construing a criminal statute any ambiguity should be resolved in favor of lenity and secondly, that absent a clear manifestation of intent, Congress will not be deemed to have defined as a federal crime that conduct which is readily denounced as criminal by the States.

Mr. Justice Marshall then proceeded in Part III of the opinion by way of dicta to discuss what interstate nexus must be established with respect to the "possession" and "receipt" offenses. The discussion of the Court follows:

The Government can obviously meet its burden in a variety of ways. We note only some of these. For example, a person "possesses . . . in commerce or affecting commerce" if at the time of the offense the gun was moving interstate or on an interstate facility, or if the possession affects commerce. Significantly broader in reach, however, is the offense of "receiv[ing] . . . in commerce or affecting commerce," for we conclude that the Government meets its burden here if it demonstrates that the firearm received has previously traveled in interstate commerce. This is not the narrowest possible reading of the statute, but canons of clear statement and strict construction do "not mean that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature." *United States v. Bramblett,* 348 U.S. 503, 510, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955). We have resolved the basic uncertainty about the statute in favor of the narrow reading, concluding that "in commerce or affecting commerce" is part of the offense of possessing or receiving a firearm. But, given the evils that prompted the statute and the basic legislative purpose of restricting the firearm-related activity of convicted felons, the readings we give to the commerce requirement, although not all narrow, are appropriate. And consistent with our regard for the sensitive relation between federal and state criminal jurisdiction, our reading preserves as an element of all the offenses a requirement suited to federal criminal jurisdiction alone.

404 U.S. at 350–51, 92 S.Ct. at 524 (footnote omitted).

Mr. Justice Brennan disassociated himself from Part III of the opinion, noting

that no question of the quantum of evidence necessary to establish the Government's prima facie case was before the Court. Mr. Justice Blackmun in his dissenting opinion noted that five other circuits had disagreed with the Second Circuit on this point.[1] He argued that no interstate nexus at all was necessary for the possession and receipt offenses and therefore would have proceeded to the constitutional issue. Since *Bass,* this circuit has not been provided the pleasure of further opportunities to interpret § 1202(a).

The appellant places principal reliance upon the language of Part III of the Supreme Court's majority opinion which draws a distinction between a felon's *possession* of a gun in interstate commerce and his *receipt* of the weapon. Although it is conceded that the statute covers three separate offenses (possession, receipt and transportation), Judge Bonsal found Bell guilty only of "possession" which narrows the issue before us. In *Bass,* Mr. Justice Marshall stated that a felon *possesses* a firearm within the statute if at the time of the offense the gun was moving in interstate commerce or on an interstate facility. 404 U.S. at 350, 92 S.Ct. 515. There was obviously no contemporaneous interstate transportation here. The gun had been purchased in Virginia several years ago and had come to rest in New York. Although Bell's car carried New Jersey plates, it was also equipped with a flat tire and in any event there was no proof that Bell was about to embark on an interstate trip. The Marshall opinion, while offering the moving in commerce or on an interstate facility as examples, further noted that the Government might "meet its burden in a variety of ways." While this comment opens the door somewhat, the opinion proceeds rapidly to close it in discussing the "receipt" offense, which it characterized as significantly broader in reach. The opinion indicated that the Government meets its burden in a *receipt* case if it can establish that the firearm "has previously traveled in interstate commerce." The message seems clear—a contemporaneous interstate nexus is necessary for a possession conviction but interstate transportation at some *prior* point suffices where the offense charged is receipt of a weapon. Since receipt here was in Virginia and not the Southern District of New York, Judge Bonsal properly could only find the possession offense applicable. If the distinction made in Part III of *Bass* is followed, it would seem that Bell's conviction of possession must be reversed.

### III

The Government's first response is that Mr. Justice Marshall's comments in Part III can be disregarded as "pure dicta." We agree that they are dicta since the only question before the Court was whether or not *any* interstate nexus was necessary for a conviction of receipt and possession of a firearm. No evidence of any such nexus had been offered by the Government in *Bass* and therefore the question of the quantum of such nexus was not before the Court.[2]

1. *United States v. Cabbler,* 429 F.2d 577 (4th Cir.), cert. denied, 400 U.S. 901, 91 S.Ct. 138, 27 L.Ed.2d 138 (1970); *United States v. Mullins,* 432 F.2d 1003 (4th Cir. 1970), vacated, 404 U.S. 1008, 92 S.Ct. 685, 30 L.Ed.2d 657 (1972); *United States v. Donofrio,* 450 F.2d 1054 (5th Cir. 1971); *Stevens v. United States,* 440 F.2d 144 (6th Cir. 1971); *United States v. Synnes,* 438 F.2d 764 (8th Cir. 1971), vacated, 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657 (1972); *United States v. Wiley,* 438 F.2d 773 (8th Cir. 1971), vacated, 404 U.S. 1009, 92 S.Ct. 686, 30 L.Ed.2d 657 (1972); *United States v. Taylor,* 438 F.2d 774 (8th Cir. 1971), vacated, 404 U.S. 1009, 92 S.Ct. 686, 30 L.Ed.2d 657 (1972); *United States v. Daniels,* 431 F.2d 697 (9th Cir. 1970); *United States v. Crow,* 439 F.2d 1193 (9th Cir. 1971), vacated, 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657 (1972).

2. In its petition for certiorari in *Bass,* the Government phrased the question presented as follows:

 Should 18 U.S.C. App. (Supp. V.) § 1202(a) be construed to prohibit any possession of firearm by felon, or only possession that is specifically "in commerce or affecting commerce"?

 40 U.S.L.W. 3016 (July 13, 1971) (No. 70–71).

Furthermore, the Government points out that in addition to the two dissenters, Mr. Justice Brennan expressly refrained from joining Part III of the opinion and Justices Rehnquist and Powell did not participate in the case. We thus have the added fillip that no majority of the present Court supports the *Bass* dictum. While we can agree that what Mr. Justice Marshall volunteered in Part III of his opinion is dictum, it does not at all follow that we can cavalierly disregard it. There is authority for the proposition that a distinction should be drawn between "obiter dictum," which constitutes an aside or an unnecessary extension of comments, and considered or "judicial dictum" where the Court, as in this case, is providing a construction of a statute to guide the future conduct of inferior courts.[3] While such dictum is not binding upon us,[4] it must be given considerable weight and can not be ignored in the resolution of the close question we have to decide.

## IV

■ The Government next urges that the great weight of circuit court authority following *Bass,* with the sole exception of *United States v. Cassity,* 509 F.2d 682 (9th Cir. 1974), supports the proposition that possession of a weapon by a felon after it has traveled in interstate commerce violates the statute. We do not agree. The only case squarely in point on this question is *Cassity* and the court there followed the *Bass* dictum.[5] In that case as here the defendant had been convicted of possessing a firearm which had previously traveled in interstate commerce but had come to rest when the defendant was arrested and the gun seized. The court noted the *Bass* distinction and the fact that the defendant had not been convicted of

---

3. See *Gabbs Exploration Co. v. Udall,* 114 U.S. App.D.C. 291, 315 F.2d 37, 39, cert. denied, 375 U.S. 822, 84 S.Ct. 61, 11 L.Ed.2d 56 (1963); *Perlman v. Timberlake,* 172 F.Supp. 246, 253 (S.D.N.Y.1959); *United States v. Certain Lands in Jackson County, Mo.,* 69 F.Supp. 565, 569 (W.D.Mo.1947); *General Electric Co. v. Hygrade Sylvania Corp.,* 61 F.Supp. 476, 525–26 (S.D.N.Y.1944); 1B J. Moore, Federal Practice ¶ 0.402[2] (2d ed. 1974); 21 C.J.S. Courts § 190 (1940).

4. Even viewing it as well-considered or judicial dictum, we are not necessarily bound to follow it. Thus in *Perlman v. Timberlake, supra,* 172 F.Supp. at 253, Judge Ryan, referring to this court, states, "I conclude that although the logical effect of the expression of doubt [by] the Court of Appeals for practical purposes is that of a holding, it was deliberately given the status of a judicial dictum by the Court uttering it . . . which while of great significance and entitled to this Court's respect does not preclude . . . this Court from reaching its own decision after independent consideration and study of the question." We also note that Chief Justice Marshall, speaking of dicta appearing in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) observed in *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 398, 5 L.Ed. 257 (1821), that "[i]t is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

5. In a very recent case, *United States v. Kelly,* 519 F.2d 251, 252 (8th Cir. 1975), the court, in upholding the conviction of a former felon for receiving a firearm which once traveled in interstate commerce, noted:

In the present case the government proved that both weapons had at one time traveled in interstate commerce and the burden established in *Bass* for a receiving charge was clearly met. *It could not, however, have sustained a possession charge by the proof offered.*

(emphasis supplied).

It is also noteworthy that the *Bass* dictum, i. e., that past interstate travel of a firearm is sufficient to sustain a "receiving" conviction, has been followed in the face of challenges that it was mere dictum. *United States v. Walker,* 489 F.2d 1353 (7th Cir. 1973), cert. denied, 415 U.S. 982, 94 S.Ct. 1574, 39 L.Ed.2d 879 (1974); *United States v. Mancino,* 474 F.2d 1240 (8th Cir.), cert. denied, 412 U.S. 953, 93 S.Ct. 3020, 37 L.Ed.2d 1007 (1973). See also *United States v. Mullins,* 476 F.2d 664 (4th Cir.), cert. denied, 414 U.S. 839, 94 S.Ct. 91, 38 L.Ed.2d 75 (1973).

transporting or receiving a firearm but of possessing it. Therefore the past interstate travel was insufficient and the conviction was reversed.

A case not cited by the Government is also persuasive. In *United States v. Pleasant,* 489 F.2d 1028 (8th Cir.), cert. denied, 416 U.S. 989, 94 S.Ct. 2398, 40 L.Ed.2d 768 (1974), the conviction of a defendant for possession of a firearm was sustained where it was established that he was arrested on an interstate bus moving in interstate commerce while carrying a shotgun. The *Bass* dictum was applied and the court noted that the defendant was using an interstate facility at the time of the seizure. The case is significant because it had been previously remanded by the court for further trial, 469 F.2d 1121 (8th Cir. 1972), the court holding that more proof was necessary to establish *inter alia* that the defendant had traveled from Ohio to Missouri before boarding a bus which would travel on an interstate highway from a terminal which serviced interstate traffic. The case illustrates the necessity of establishing a close and contemporaneous interstate nexus in a possession case in accordance with the *Bass* dictum.

The Government relies on *United States v. Kenner,* 508 F.2d 409 (4th Cir. 1974), cert. denied, 421 U.S. 917, 95 S.Ct. 1578, 43 L.Ed.2d 783 (1975), and *United States v. Bumphus,* 508 F.2d 1405 (10th Cir. 1975), both of which do contain statements that the Government can es-

tablish guilt under § 1202(a) where the firearm has moved in interstate commerce at some time prior to its receipt or possession. *Kenner* does not even cite *Bass* and it is not clear that the defendant was convicted solely of possession since the indictment charged receipt as well. In *Bumphus* it is clear that the defendant was convicted of unlawfully receiving firearms, 508 F.2d at 1406, 1407, so that the comment about possession is dictum. Similarly, *United States v. Horton,* 503 F.2d 810 (7th Cir. 1974), where there was previous interstate commerce movement of a firearm, involved a conviction for receipt only and not possession. That court did say: "Defendant's possession of a firearm that previously moved in interstate commerce satisfies the statute." Id. at 813. However, the case it cites for that proposition, *United States v. Walker,* 489 F.2d 1353, 1357 (7th Cir. 1973), cert. denied, 415 U.S. 982, 94 S.Ct. 1574, 39 L.Ed.2d 879 (1974), involved a receipt conviction and expressly noted the *Bass* dictum, stating: "Similarly, the Court [in *Bass*] expressly stated that the receipt offense is 'significantly broader in reach' than the possession offense." The *Walker* court further stated: " . . . [T]he entire opinion demonstrates that Mr. Justice Marshall's choice of language was deliberate and precise." 489 F.2d at 1357.

We conclude that the weight of authority is not in favor of the Government's position.[6] The *Bass* distinction

---

**6.** In a case not relied upon by the Government, *United States v. Calhoun,* 510 F.2d 861, 869–70 (7th Cir.), cert. denied, 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975), the Seventh Circuit states:

> As to this section [§ 1202(a)(1)], this circuit follows the majority rule that the required nexus with interstate commerce is satisfied by proof the *received* firearm was previously transported in interstate commerce.

(emphasis supplied). Although the court previously described the convictions on the two counts in question as being for "possession" of two weapons (id. at 864), a reading of the indictment on file reveals that the defendant was charged only with their *receipt* and not possession. (Counts V, VI, Ind. # 73, H.,

CR.,–129, U.S.Dist.Ct., Northern District of Indiana, Hammond Division).

The Government's reliance on *United States v. Ransom,* 515 F.2d 885, 891 (5th Cir. 1975) is curious. There was no interstate commerce argument raised in the opinion; the issue was whether or not there was possession. *United States v. Fields,* 500 F.2d 69 (6th Cir.), cert. denied, 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974); *United States v. Bush,* 500 F.2d 19 (6th Cir. 1974); and *United States v. Day,* 476 F.2d 562 (6th Cir. 1973), involve convictions for both receipt and possession. We note that in *Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), the Court states:

> [W]hen a jury returns a guilty verdict on an indictment charging several acts in the con-

between receipt and possession has been observed and followed in square holdings. Where language in those cases we have reviewed fails to consider the two offenses individually, the discussion therein is dictum since the convictions involved the broader crime of receipt for which prior interstate travel has been held in numerous cases to satisfy the commerce requirement. Both *Cassity* and *Pleasant* indicate that where a possession conviction alone is involved, a contemporaneous interstate nexus is a necessary basis for an affirmance.[7]

## V

The Government also urges that even if the *Bass* dictum is followed and interpreted to require for possession a contemporaneous interstate traveling of the firearm in interstate commerce, the statute also proscribes possession which "affects" such commerce. The argument is made that even though Bell's possession here had an imperceptible or minimal affect on commerce, the Congress may properly have considered that the "total incidence" of the transportation of guns in foreign and interstate commerce would justify legislation imposing criminal sanctions in individual cases. *Perez v. United States,* 402 U.S. 146, 154, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). The Government relies upon Senate debates in which Senator Long's remarks would indicate simply that "anybody who has been convicted of a felony . . . is not permitted to possess a firearm." 114 Cong.Rec. 13868, 90th Cong., 2d Sess. (1968). The argument however has already been made and to no avail. Mr. Justice Blackmun relied on Senator Long's comments in his dissenting opinion in *Bass.* He argued that the congressional intent was "to reach and prohibit every possession of a firearm by a felon; that Congress found that such possession, whether interstate or intrastate, affected interstate commerce . . . ." *United States v. Bass, supra,* 404 U.S. at 353, 92 S.Ct. at 525. The majority in *Bass* however refused to reach the issue of whether Congress could constitutionally prohibit mere possession, *United States v. Bass, supra,* 404 U.S. at 339 n.4, 92 S.Ct. 515, holding that some interstate nexus was requisite in each of the three offenses set forth in § 1202(a). Finding the legislative history unenlightening, it did not credit the comments of Senator Long. If mere possession by a felon of a firearm which had once traveled in interstate commerce was sufficient to "affect" commerce, it is inconceivable that the *Bass* dictum would have insisted upon the requirement of contemporaneous travel or transportation in an interstate facility. We consider the argument to be without merit.[8]

junctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged.

7. The only circuit court opinion we have read which deliberately blurs the distinction between possession and receipt is *United States v. Brown,* 472 F.2d 1181 (6th Cir. 1973), where the defendant was convicted of both unlawful receipt and possession of a firearm. The conviction was upheld although there had been only a prior interstate transportation. Citing the *Bass* dictum, the court concluded that "one could not very well possess a firearm without receiving it." 472 F.2d at 1182. While this may be true in effect, the court obliterates the carefully drawn distinction between the separate offenses made by the Supreme Court in *Bass* and eviscerates the language of the statute which provides for three discrete crimes. See *United States v. Kelly, supra,* 519 F.2d at 253–54.

8. Bell's mere possession of the weapon could only have a de minimis effect on interstate commerce. In *United States v. Marihart,* 492 F.2d 897 (8th Cir.), cert. denied, 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974), the court sustained a firearm possession conviction as one affecting interstate commerce where the weapons were purchased from an out-of-state federally licensed dealer who conducted an interstate business and who had shipped the arms in question to another interstate dealer from whom they were stolen by one of the defendants on or shortly after arrival. Also in *United States v. Pleasant, supra,* 489 F.2d at 1030 where the firearm was seized while the defendant was traveling on an interstate bus moving in interstate commerce, the court found sufficient basis for a jury to conclude that the defendant's possession affected interstate commerce. Here of course there is no such proximity in time or nexus between the

The Government argues further that the *Bass* dictum is illogical and anomalous, since it punishes receipt of a gun with less proof than for possession although the latter involves a continuing custody. The Government also argues that the *Bass* dictum, to the extent it requires a nexus for possession different from that for receipt, is inconsistent with its holding that an interstate nexus is applicable to all three offenses. This argument was successfully advanced in *United States v. Snell,* 353 F.Supp. 280, 284 (D.Md.1973).

■ As we have indicated, the statute is not a model of clarity and its legislative history is murky at best. However we think that the *Bass* opinion itself indicates why the possession offense is more narrowly construed than the other offenses. The interpretation given to § 1202(a) in the *Bass* dictum is grounded in part upon the principles of federalism espoused in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). See *Bass, supra,* 404 U.S. at 349, 92 S.Ct. 515. Unlike transporting or receiving firearms in interstate commerce which have a definite federal jurisdictional flavor (see *Bass, supra,* 404 U.S. at 350 n.18, 92 S.Ct. 515), the crime of possession of a firearm is more traditionally in the realm of state court jurisdiction. We note that in New York State a person previously convicted of a crime who has in his possession any firearm is guilty of a class D felony. New York Penal Law § 265.02(1) (McKinney Supp. 1974–75). Cf. §§ 265.20(a)(3) and 400.-00(1). In the argument on appeal we were advised that the state undertook the prosecution of the drug charge against Bell. Why the United States proceeded with the firearm prosecution does not appear in the record. Certainly, considerations of conservation of the time and energy of judicial, prosecutorial and administrative personnel would dictate that the state should have undertaken the prosecution of Bell on the firearm charge as well. This is particularly so in view of the *Bass* dictum which would indicate that a successful federal prosecution was at best doubtful. Certainly, there is no reason to further burden the district courts with additional criminal litigation. The *Bass* Court recognized that unnecessary intrusion upon the state's criminal processes was to be avoided and hence the greater connection of the possession crime to the interstate ingredient. As we have recently noted (*Wallace v. Kern,* 520 F.2d 400 (2d Cir. 1975), citing *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed. 482 (1975); *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975)), the *Younger v. Harris* doctrine has been considerably broadened in the last term of the Supreme Court. We see no reason therefore why the present Court would wish now to abandon that principle initially applied in *Bass.*

We conclude therefore that the conviction below must be reversed.

___

seizure and the interstate transportation so that the possession could be reasonably characterized as one which affected interstate commerce.