**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward Thomas MALONE, Defendant-Appellant.**

No. 75–2636.

United States Court of Appeals, Ninth Circuit.

June 17, 1976.

Rehearing Denied Aug. 23, 1976.

Danilo J. Becerra, Federal Public Defender (argued), Los Angeles, Cal., for defendant-appellant.

Brendan Lynch, Asst. U.S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

OPINION

Before MERRILL and WRIGHT, Circuit Judges, and RENFREW,* District Judge.

PER CURIAM:

Appellant was convicted on two counts of possession of a firearm by a felon. [18 U.S.C. App. § 1202(a)(1)]. On appeal he contends that the government failed to prove that there was sufficient nexus between his possession and interstate com-

---

* Honorable Charles Renfrew, United States District Judge of the Northern District of California, sitting by designation.

merce. We agree and reverse the convictions.

The indictment charged that appellant "knowingly possessed and received" two firearms on or about November 22, 1974. The parties stipulated that the weapons had moved in interstate commerce some six and 18 months respectively before this date. No further evidence was adduced to prove a connection between appellant's possession of the firearm and interstate commerce.

The court found him guilty on two counts of *possession,* not of *receipt* of the firearms. While the stipulation might have been sufficient to meet the government's burden in a receiving case, it is not sufficient to establish the nexus with interstate commerce required in a possession case. *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *United States v. Lathan,* 531 F.2d 955 (9th Cir. 1976); *United States v. Cassity,* 509 F.2d 682 (9th Cir. 1974).

While we recognize that the distinction between the interstate nexus required in *possession* as opposed to *receipt* offenses is not drawn in the statute with convincing clarity, we are bound to follow our holding in *Cassity.* We are less reluctant after reviewing the Second Circuit's recent treatment of the issue in *United States v. Bell,* 524 F.2d 202 (2d Cir. 1975). In a well reasoned opinion the court examined the statutory history of the offenses, the origin of the distinction as developed in *Bass,* its treatment in the lower courts, and the principles of federalism which support maintenance of the distinction before concluding that the *Bass* dictum should be heeded. We agree.

REVERSED AND REMANDED.

RENFREW, District Judge (dissenting):

I respectfully dissent.

The question before the Court is whether the distinction should be perpetuated between the showing of interstate commerce necessary under 18 U.S.C. App. § 1202(a) for a prosecution for receipt of a firearm by a felon, on the one hand, and a prosecution for possession of a firearm by a felon, on the other. Section 1202(a) was enacted as part of an amendment to the Omnibus Crime Control and Safe Streets Act of 1968 and provides in relevant part:

"Any person who—

"(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, * * *

\* \* \* \* \* \*

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,-000 or imprisoned for not more than two years, or both."

The critical phrase is "who receives, possesses, or transports in commerce or affecting commerce," a phrase which has already undergone the scrutiny of the Supreme Court in *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

The question in *Bass* was whether the verbs "receives" and "possesses" are modified by the phrase "in commerce or affecting commerce". The Supreme Court answered the question affirmatively, holding that "the phrase 'in commerce or affecting commerce' is part of all three offenses * * *." 404 U.S. at 347, 92 S.Ct. at 522. In resolving the question before it, the Court discussed several other issues not necessary to its decision. Those dicta have created difficulties of interpretation in later cases, including the instant one.[1] Most relevant to the issue before this Court is language in the *Bass* decision concerning the proof required of the Government to satisfy the "in commerce or affecting commerce"

---

1. In *Barrett v. United States,* 423 U.S. 212, at 221–224, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976), the Supreme Court expressly disavowed dicta in *Bass* concerning the interpretation of 18 U.S.C. § 922(h), a part of the Gun Control Act of 1968, amending Title IV of the Omnibus Crime Control and Safe Streets Act of 1968. The Court brushed aside the interpretation of Title IV suggested in *Bass* as "just *another observation* made in passing as the Court proceeded to consider § 1202(a)." *Id.* at 223, 96 S.Ct. at 504 (emphasis added).

element of Section 1202(a). *Bass* was a five-to-two decision but, on this question of the quantum of proof necessary, Justice Brennan expressly withheld opinion. The following dictum, therefore, is supported by only four Justices and is completely unsupported by the statutory language or the legislative history:

> "Having concluded that the commerce requirement in § 1202(a) must be read as part of the 'possesses' and 'receives' offenses we add a final word about the nexus with interstate commerce that must be shown in individual cases. The Government can obviously meet its burden in a variety of ways. We note only some of these. For example, a person 'possesses . . . in commerce or affecting commerce' if at the time of the offense the gun was moving interstate or on an interstate facility, or if the possession affects commerce. *Significantly broader in reach, however,* is the offense of 'receiv[ing] . . . in commerce or affecting commerce,' for we conclude that the Government meets its burden here if it demonstrates that the firearm received has previously traveled in interstate commerce." 404 U.S. at 350, 92 S.Ct. at 524 (emphasis added) (footnote omitted).

This dictum has created wholesale confusion in the Courts of Appeals and lies at the heart of appellant's argument in the instant case.

In *United States v. Cassity,* 509 F.2d 682 (9 Cir. 1974), this Court reviewed a "possession" conviction under Section 1202(a)(1). In a rather terse opinion, the Court quoted the above passage from *Bass* and, on that basis, distinguished the earlier decision of this Court in *United States v. Giannoni,* 472 F.2d 136 (9 Cir.), *cert. denied,* 411 U.S. 935, 93 S.Ct. 1911, 36 L.Ed.2d 396 (1973). In *Giannoni,* this Court had affirmed the conviction of a felon who·"received" a gun in the course of stealing it from a gun shop, despite the fact that the gun had ended its

travel in interstate commerce thirteen years earlier. The *Cassity* court based its distinction on the fact that *Giannoni,* involved a prosecution for receipt rather than for possession. It is unclear exactly what proof the *Cassity* court would have found to be sufficient. In setting out the facts of the case, the Court made the following statement concerning the gun in question:

> "The Savage rifle taken from Cassity's home was shipped from Westfield, Massachusetts, to Los Angeles, California, in October, 1966. Cassity purchased the rifle in the state of Washington from a friend in the early spring of 1973." 509 F.2d at 682.

In concluding that the Government had not met its burden of proof, the Court made the following observation:

> "In Cassity's case, the United States Attorney's information alleged in part that he 'did knowingly receive, possess, and transport in commerce, and affecting commerce, a firearm.' The undisputed evidence indicates that the rifle had traveled from Massachusetts to California, and that it ultimately came to rest in Washington. While the rifle had been in interstate commerce at one time, the Government proved no connection between Cassity's possession of the weapon in 1973 and interstate commerce." *Id.* at 683.

Other circuits have struggled with the *Bass* dictum, reaching various accommodations with it. This is not a case in which the citation of authority is of much value. Some cases support my position. *See, e. g., United States v. Kenner,* 508 F.2d 409 (4 Cir. 1974), *cert. denied,* 421 U.S. 917, 95 S.Ct. 1578, 43 L.Ed. 783 (1975). Other cases support the position of the majority. *See, e, g., United States v. Bell,* 524 F.2d 202 (2 Cir. 1975), a case relying in large part on our decision in *Cassity.*[2] In my view, no persuasive arguments in favor of following the *Bass* dictum have been advanced.

---

**2.** To the extent that *Bell* relies on *Cassity, Bell* is dubious authority in the context of a suggestion that *Cassity* be reconsidered.

The anomaly of the majority position is pointed out by the following hypothetical situation. Let us suppose that in addition to the facts of the present case, there had been another felon who received the firearms in question and then immediately transferred them to appellant. The majority would have upheld the conviction of the felon who received the firearms but would have reversed the conviction of the appellant.[3] Such a result is not only contrary to the plain and unambiguous language of the statute but flies in the face of the congressional intent.[4]

**3.** The Court of Appeals for the Eighth Circuit has attempted to blunt the distinction without ignoring it. In *United States v. Haley,* 500 F.2d 302 (8 Cir. 1974), the court reviewed a conviction under Section 1202(a)(1) for receipt of a firearm by a felon. The evidence showed only possession. The court affirmed the conviction, relying on the more liberal proof standard applicable to receipt under the *Bass* dictum. The Court stated:

> "We think that the government's evidence in this case, which established possession of the firearm, was circumstantial evidence which would allow the jury to reasonably infer receipt." 500 F.2d at 304.

A problem with this obviously evasive approach, with which the *Haley* court had to struggle, is the question of venue for the receipt offense. This would create insuperable problems if it were clear that the receipt occurred in another district.

**4.** The progression of Section 1202 through Congress is described in *Stevens v. United States,* 440 F.2d 144, 146–147 (6 Cir. 1971), the holding of which was rejected in *Bass.* Because there are no committee reports discussing the provision, the only legislative history is the debate recorded in the Congressional Record. That debate is appended to the *Stevens* decision, 440 F.2d at 152–166. The *Stevens* court selected and set in chronological order the following portions of the debate relevant to the interpretation of Section 1202:

"On May 17, 1968, the amendment adding Title VII, including the language of § 1202, to the Act, was first presented on the Senate floor. Senator Long of Louisiana, its sponsor, explained the amendment as follows:

> " 'I have prepared an amendment which I will offer at an appropriate time, simply setting forth the fact that anybody who has been convicted of a felony or discharged from the Armed Forces for conditions other than honorable, has been adjudged by a court of the United States or State to be mentally incompetent, or, if he is a citizen of the United States, who has renounced his citizenship, or, if he is an alien, who is illegally and unlawfully in the United States *he is not permitted to possess a firearm*, and he would be punished by a sentence not to exceed 2 years in the penitentiary or a $10,000 fine, or both.
>
> " 'It might be well to analyze, for a moment, the logic involved. When a man has been convicted of a felony, unless—as this bill sets forth—he has been expressly pardoned by the President and the pardon states that the person is to be permitted to possess firearms in the future, that man *would have no right to possess firearms.* He would be punished criminally if he is found in possession of them.' 114 Cong.Rec. 13,868 (1968).

"On May 23, 1968, the day Senator Long's amendment was agreed to by the Senate and immediately before the Senate passed H.R. 5037, as amended, with 76 Senators voting, the following explanation and discussion of the amendment occurred:

> " 'Mr. LONG of Louisiana. Mr. President, the amendment has been on the desks of Senators for several days. I had it printed in the RECORD some time ago.
>
> " 'What the amendment seeks to do is to make it unlawful for a firearm—be it a handgun, a machinegun, a long-range rifle, or any kind of firearm—*to be in the possession of a convicted felon* who has not been pardoned and who has therefore lost his right to possess firearms. It would not apply to a person pardoned by a Governor or a President if the pardon specifically provides that he will have the right to carry firearms. He would then have that right. Otherwise, he would not have it. It also relates to the transportation of firearms.
>
> " 'Mr. McCLELLAN. I have not had an opportunity to study the amendment. The Senator said something to the effect that if we could do this, we certainly could do that, under the Constitution. The thought that occurred to me as the Senator explained it, is that if a man had been in the penitentiary, had been a felon, and had been pardoned, without any condition in his pardon to which the able Senator referred, granting him the right to bear arms, could that man own a shotgun for the purpose of hunting?
>
> " 'Mr. LONG of Louisiana. No, he could not. He could own it, but *he could not possess it.*
>
> " 'Mr. McCLELLAN. I beg the Senator's pardon?
>
> " 'Mr. LONG of Louisiana. This amendment does not seek to do anything about who owns a firearm. He could not carry it around; he could not have it.
>
> " 'Mr. McCLELLAN. Could he have it in his home?
>
> " 'Mr. LONG of Louisiana. No, he could not.

Despite the recent vintage of *Cassity*, its rule is wrong, contrary to legislative intent, and defies common sense. The artificial distinction between the required showing of interstate commerce in the case of possession of a firearm as distinguished from the receipt of a firearm must be eliminated. I would suggest a hearing *en banc* for this case so that this Court could overrule *Cassity* and apply the statute as Congress intended and enacted it.

For these reasons I respectfully dissent.

" 'This amendment would proceed on the theory that every burglar, thief, assassin, and murderer is entitled to carry a gun until the commission of his first felony; but, having done that *he is then subject to being denied the right to use those weapons again.*

" 'Several Senators. Vote! Vote!' 114 Cong.Rec. 14,773–75 (1968).

\*  \*  \*  \*  \*  \*

"On June 6, 1968, shortly before the House passed H.R. 5037, as amended by the Senate, with 415 Congressmen voting, the following explanation of Title VII of the bill was given on the House floor by Congressman Machen:

" 'Title VII prohibits the unlawful possession or receipt of firearms by felons, veterans who have been other than honorably dis-charged, mental incompetents, aliens who are illegally in the country, and former citizens who have renounced their citizenship. I believe this provision is necessary to a coordinated attack on crime and also a good complement to the gun-control legislation contained in Title IV of this bill.' 114 Cong. Rec. 16,286 (1968)."

440 F.2d at 147–148 (emphasis added).

In *Bass* the Supreme Court held that this legislative history was consistent with a congressional intent to require an interstate nexus for the possession and receipt offenses. No matter how one views that interpretation, the legislative history is simply inconsistent with a heavier Government burden for a possession offense than for a receipt offense.